TBI, INC. *vs.* BOARD OF HEALTH OF NORTH ANDOVER.

Essex. December 6, 1999. - March 10, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Solid Waste Management. Department of Environmental Protection. Municipal Corporations,* Board of health. *Environment,* Air pollution. *Administrative Law,* Regulations, Decision, Agency's interpretation of regulation, Judicial review. *Statute,* Construction.

Discussion of G. L. c. 111, § 150A, governing proceedings for site assignments of solid waste facilities. [11-12]

In a proceeding brought under G. L. c. 111, § 150A, for a site assignment for a solid waste facility, the board of health properly interpreted 310 Code Mass. Regs. § 16.40(1)(c)(1) as creating a rebuttable presumption that a proposed recycling and solid waste transfer station would be designed and constructed to comply with Federal and State environmental standards. [12-13]

A board of health acted within its authority pursuant to 310 Code Mass. Regs. § 16.40(1)(c)(2) in denying an application under G. L. c. 111, § 150A, for a site assignment for a recycling and solid waste transfer station, for the reason that the proposed facility would not comply with the Federal ambient air quality standard for particulate matter, where the applicant did not demonstrate that it would be able to comply with the air quality standard. [13-15]

A town board of health, in denying an application for a site assignment to construct a solid waste facility, properly applied the preference, set forth in 310 Code Mass. Regs. § 16.40(4)(i), as interpreted by the Department of Environmental Protection, against siting a solid waste facility in that town, which already was host to a major regional disposal facility, and properly weighed the preference against the extent the proposed facility would meet the solid waste needs of the municipality or region and incorporate recycling, composting, or waste diversion. [15-16]

The interpretation by the Department of Environmental Protection of its regulation, 310 Code Mass. Regs. § 16.40(4)(i), was not demonstrated to be "patently wrong, unreasonable, arbitrary, whimsical, or capricious." [16-17]

The specific provisions of 310 Code Mass. Regs. § 16.30(2) are the exclusive basis for permitting a board of health to assess a supplemental fee for extraordinary technical expenses in connection with solid waste siting application proceedings under G. L. c. 111, § 150A, and a Superior Court judge correctly ruled that a board was not entitled to such fees if the board did not adhere to the regulatory provisions governing such assessments. [17-19]

CIVIL ACTION commenced in the Superior Court Department on December 8, 1997.

Motions ·for judgment on the pleadings and for partial summary judgment were heard by *Richard E. Welch, III,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Thomas A. Mackie (John D. Beling* with him) for the plaintiff. ·

*Kenneth L. Kimmell (Cristin L. Rothfuss* with him) for the defendant.

*Kevin F. O'Donnell,* for Joan Kulash & others, amici curiae, submitted a brief.

Cowin, J. TBI, Inc. (TBI), filed an application in April, 1997, pursuant to G. L. c. 111, § 150A, with the board of health of North Andover (board) and the Department of Environmental Protection (DEP) for a site assignment to construct a recycling and solid waste transfer station (facility) in North Andover (town). On July 23, 1997, the DEP issued a favorable report on TBI's application. After an evidentiary hearing, the board issued a written decision on November 5, 1997, denying the application because the proposed site would violate air quality standards and would· cause a concentration of facilities in the town. The board also noted that increased traffic congestion due to the proposed facility would have resulted in denial of the application without prejudice, subject to reapplication if the Massachusetts Highway Department approved a traffic signal. Finally, the board ruled that, although the site would violate a Federal Aviation Administration (FAA) guideline prohibiting the intake of certain kinds of waste near an airport, the application would not be denied for that reason. If that were the only issue, the board would have approved the site assignment on the condition that the facility not accept such kinds of waste.

The board also assessed fees against TBI. Prior to the board's decision, it assessed an application fee of $20,729 to TBI pursuant to 310 Code Mass. Regs. § 16.30(1)(a) (1994). Because of the complexity of the hearings, however, the actual costs incurred by the board were $41,211.29. As a result, on January 22, 1998, the board voted to assess a supplemental fee of $20,482.29 under its rule authorizing fees for outside consultants. TBI refused to pay the supplemental fee.[1]

Pursuant to G. L. c. 111, § 150A, and G. L. c. 30A, § 14 (7), TBI appealed from the board's denial of its application and the assessment of the supplemental fee to the Superior Court. A

---

[1]TBI did not contest the·original fee assessment of $20,729.

Superior Court judge denied TBI's motion for judgment on the pleadings and affirmed the board's decision denying the application. In a separate decision, the judge allowed TBI's motion for summary judgment refusing to allow the board to assess a supplemental fee.[2]

TBI appealed from the denial of the application and the board cross-appealed from the denial of the supplemental fee. We granted TBI's application for direct appellate review. TBI challenges each of the board's determinations on the ground that the board exceeded its statutory authority.[3] We conclude that the Superior Court judge properly affirmed the denial of the site assignment application based on the board's air quality concerns and the concentration of facilities in the town. Because we conclude that the board's denial was proper on those grounds, we need not address TBI's arguments concerning traffic congestion and the FAA guideline regarding waste near an airport. We also affirm the Superior Court judgment denying the board's assessment of a supplemental fee.

1. *Site assignment statute.* In response to a shortage of solid waste facilities in the Commonwealth in the mid-1980's, the Legislature amended the existing process for obtaining a facility site assignment. G. L. c. 111, § 150A, as amended through St. 1987, c. 584, § 16. Under the amended statute, an applicant must seek a site suitability determination from the DEP. The DEP determines whether the proposed site satisfies the site suitability criteria established in G. L. c. 111, § 150A$\frac{1}{2}$, inserted by St. 1987, c. 584, § 17, and its own regulations, 310 Code Mass. Regs. § 16.40 (1994). These criteria include standards governing the relationship between the proposed site and water supply, air quality, traffic congestion, wildlife populations and agriculture. § 150A$\frac{1}{2}$. In addition, DEP considers whether a proposed site will cause a nuisance or a concentration of facilities in one municipality. If the DEP issues a favorable site suitability report, the local board of health holds a public hearing in which it too must determine whether the proposed site meets the criteria. By statute, the DEP's site suitability determination is not binding on the local board which must make an independent determination whether the proposed site complies

[2]TBI filed a separate motion for summary judgment concerning the supplemental fee.

[3]TBI challenges only the legal authority of the board to make its determinations. It does not dispute any of the board's factual findings.

with the criteria. G. L. c. 111, § 150A. It is this determination that TBI challenges.

2. *Air quality standard.* One of the grounds for denial of TBI's application was that the site assignment would violate the air quality criteria as established by State and Federal air quality standards. 310 Code Mass. Regs. § 16.40(4)(e). After receiving testimony from both its own and TBI's air quality experts and weighing the credibility of the witnesses, the board determined that the construction of the facility at the proposed site would cause a level of particulate matter (PM10) higher than permitted by the national ambient air quality standard established by the United States Environmental Protection Agency (EPA).[4]

(a) *Rebuttable presumption.* The board reached the air quality determination pursuant to 310 Code Mass. Regs. § 16.40(1)(c)(1) which provides that all applications "shall be evaluated with the presumption that the proposed facility shall be designed and constructed to meet all relevant state and federal statutory regulatory and policy requirements." The board interpreted this regulation as creating a rebuttable presumption that requires the board to presume compliance with Federal and State standards unless presented with evidence to the contrary.

TBI contends that the board exceeded its authority by considering whether the proposed site would comport with the EPA PM10 concentration standards.[5] TBI argues that the plain language of 310 Code Mass. Regs. § 16.40(1)(c)(1) prevents the board from evaluating whether granting the proposed site assignment would comport with the EPA PM10 standard. Under TBI's reasoning, the regulation's absolute presumption requires the board to presume that the proposed facility would comply with the EPA PM10 standard and the board could not deny the site assignment based on air quality criteria.

We conclude that the board's interpretation of 310 Code Mass. Regs. § 16.40(1)(c)(1) as creating a rebuttable presumption of compliance with Federal and State standards is correct. A local board is required to determine whether a proposed site satisfies the criteria established in § 150A$^{1}/_{2}$ and the DEP

[4]PM10 is a measure of very small particles of dust that can be drawn deeply into the lungs.

[5]The board, after receiving evidence, determined that the proposed site would not comport with the EPA PM10 standard. For a summary of the board's finding, see *infra* at 13-14.

regulations. 310 Code Mass. Regs. § 16.40(1)(b). The air quality criteria specifically require a determination by the board that the proposed site assignment will not violate State and Federal air quality standards or otherwise cause a danger to the public health, safety, or the environment. 310 Code Mass. Regs. § 16.40(4)(e). If the board were to apply an absolute presumption that the proposed site would comply with the EPA PM10 standard, it would be unable to fulfil its obligation under the air quality criteria to determine compliance with Federal standards.[6] Indeed, in many cases an absolute presumption of compliance would obviate the need for a hearing because the board would not be able to consider compliance with Federal and State standards as required by the criteria. Regulations may not be interpreted in a way that produces a result which "is contrary to the plain language of the statute and its underlying purpose." *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997). The application of a rebuttable presumption preserves both the board's statutorily mandated role in approving a site assignment by allowing the board to consider all the siting criteria, and its role in applying the presumption (in the absence of other evidence) that the proposed facility will be designed and constructed to comply with State and Federal requirements.

(b) *Detailed design and operation plans.* The board received testimony from a certified meteorologist that, based on accepted scientific models, operation of the facility as proposed would create a level of PM10 higher than allowed under the EPA standard. Based on this evidence, the board determined that the proposed facility would not comply with the EPA PM10 concentration standards, and the board shifted the burden to TBI to produce evidence that it could comply with the air quality standard. At the commencement of the evidentiary hearing, the hearing officer had ruled that the parties could "inquire what measures TBI intends to implement . . . in order to comply with the siting conditions." The hearing officer noted that he was "not requiring TBI to submit detailed design or

---

[6]TBI contends that there is no conflict in the regulations because, even though the board must presume compliance with State and Federal standards, the board could still deny the site assignment if it determined that the facility could "constitute a danger to the public health, safety or the environment" based on purely local concerns. The plain language of the statute and regulation belies TBI's position. There is nothing in the language of the statute or regulation that limits the scope of the board's authority to address only local concerns in relation to the air quality regulation.

operational plans which DEP will require in its permitting process." TBI offered to perform postoperation air testing and promised to devise solutions if the testing showed noncompliance with the PM10 standard. The board concluded, however, that it could not grant a site assignment based solely on TBI's promise to solve potential air quality problems. The board, therefore, denied the site assignment because TBI did not enumerate specific techniques likely to be feasible and effective in combating the excess PM10.

TBI contends that this decision impermissibly forces it to present detailed design and operation plans in violation of 310 Code Mass. Regs. § 16.40(1)(c)(2). Because the DEP did not require TBI to produce detailed plans for pollution control, TBI argues that the board is not authorized to make such a demand. Thus, according to TBI, the board incorrectly determined that the site assignment did not comply with air quality standards because TBI could not show specific remedies for expected excess PM10.

We conclude that the board acted within its authority in denying the site assignment because TBI failed to show an ability to comply with the EPA PM10 standard. The DEP regulation provides that "[t]he review of an application [by the DEP and the local board] shall not consider detailed facility designs or operations" unless the DEP determines information is necessary to decide whether potential discharges or emissions from the proposed facility render the site unsuitable or the applicant intends to alter the site or facility and the DEP determines that specific information is necessary to determine compliance. 310 Code Mass. Regs. § 16.40(1)(c)(2). Read in isolation, this regulation appears to limit the board's consideration of operation and design plans to circumstances in which the DEP authorizes the board to consider this information. The air quality regulation, however, requires a local board to take "into consideration . . . the concentration and dispersion of emissions" from the proposed facility. 310 Code Mass. Regs. § 16.40(4)(e)(1).

In order for the board to evaluate the emissions from the proposed facility, the board must examine information regarding its design and operation. The emissions do not exist in a vacuum. Thus, the plain language of these regulations conflicts if DEP does not authorize the board to receive information regarding emissions from the proposed facility. Indeed, strictly

construed, the language of the former would prevent the board from complying with the latter. When a conflict exists, the provisions should be interpreted in a way that is harmonious and consistent with the legislative design. See *Peters* v. *Michienzi*, 385 Mass. 533, 537 (1982).

We reject TBI's interpretation of 310 Code Mass. Regs. § 16.40(1)(c)(2). A literal reading of that regulation that only DEP can direct consideration of detailed plans for pollution control makes no sense in view of the statutory scheme. The board's interpretation resolves the conflict by limiting receipt of detailed design and operation plans to the extent necessary to determine compliance with the air quality standard. The board's interpretation, however, does not permit it to require information more extensive than necessary to evaluate the air quality standard. Under § 150A, the board and the DEP are required to evaluate the criteria to determine whether to grant a site assignment. However, the DEP alone decides whether to grant construction and operation permits that require submission of extensive design and operation details. The board's interpretation permits it to fulfil its statutory obligation to determine compliance with the site suitability criteria without requiring information necessary only for the DEP's permitting function. The board's interpretation correctly reconciles the regulations with the policy and language of the statute to establish distinct site assignment and permitting processes.[7]

3. *Preference against concentration of solid waste facilities.* The board applied a preference against siting the facility in the town because that municipality is already the host to a major regional disposal facility.[8] Utilizing this preference, the board denied TBI's application. The board relied on the DEP's

[7]TBI also argues that the board should have granted the site assignment on the condition that TBI employ effective pollution control measures to meet the air quality standard. We reject this argument. The board determined that TBI had not produced any credible evidence that it would be able to comply with the air quality regulation. If the board were required to grant a conditional site assignment in these circumstances, it would be required to accept TBI's unsubstantiated promise that it would comply with the air quality standard. The board in essence would be required to ignore its obligation to determine whether the site assignment would comply with the air quality standard.

[8]The town is the host to a regional disposal facility that places the town seventh in the Commonwealth for the amount of waste handled. Two other solid waste facilities exist in neighboring communities within a four-mile radius of the proposed site making this the highest regional concentration of solid waste management capacity in the Commonwealth.

interpretation of 310 Code Mass. Regs. § 16.40(4)(i) to apply this preference. The regulation provides that a local board shall give preference "to sites located in municipalities in which no existing . . . facilities are located." *Id.* The regulation further directs the DEP or the local board to weigh this preference against the extent to which the proposed facility will (1) meet the solid waste needs of the municipality or region and (2) incorporate recycling, composting, or waste diversion. *Id.* The DEP, in its report on TBI's application, recognized that the regulation as written could be read as granting a preference in favor of siting a new facility in a town that does not already host a facility. However, the DEP stated that the purpose of the regulation "is to avoid an unreasonable concentration of disposal facilities within a single community." Thus, the DEP interpreted the regulation to permit the board to apply a preference against siting new facilities in a municipality that does host another facility.[9]

In accordance with the DEP interpretation, the board weighed this preference against the extent to which the proposed facility would meet the solid waste needs of the town and the region and incorporate recycling, composting, or waste diversion. Because the board found that these factors did not outweigh the preference against siting the facility in the town, the board denied the application.[10]

TBI argues that the DEP's interpretation of its own regulation is erroneous. TBI claims that the language of 310 Code Mass. Regs. § 16.40(4)(i) creates a preference for siting a facility in a town without an existing facility but does not allow a preference against siting a facility in a town in which other facilities already exist. TBI also argues that the DEP cannot interpret its regulations to permit local boards to consider site concentrations in other communities.[11]

We conclude that the DEP's interpretation of 310 Code Mass. Regs. § 16.40(4)(i) and the board's subsequent action based on

---

[9]The DEP, in its evaluation of TBI's application, determined that the town was already the host to a regional disposal facility, but concluded that the presence of the existing facility was not a sufficient reason for denying TBI's application.

[10]The board uses an incorrect term when it deems the preference against siting the facility a "negative" one. However, we review what the board did, not its terminology. The action the board took in this respect was proper.

[11]On appeal, TBI does not challenge the board's conclusion that the burdens on the community outweigh the benefits of the additional facility.

that interpretation were proper.[12] We only disturb an agency's interpretation of its own regulation if the "interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious." *Brookline* v. *Commissioner of the Dep't of Envtl. Quality Eng'g*, 398 Mass. 404, 414 (1986). The DEP's interpretation of its regulation permitting a preference against siting a facility in a municipality that hosts existing facilities is consistent with the enabling statute, G. L. c. 111, § 150A$^1$/$_2$. The statute authorizes the local boards and the DEP to evaluate "the extent to which existing solid waste disposal facilities are located within a municipality." G. L. c. 111, § 150A$^1$/$_2$ (15). The Legislature articulated a policy against undue concentration of facilities in any particular community. The statute does not make enforcement of this policy the sole province of the DEP. At the site assignment stage, the DEP and the local board share responsibility for enforcement of the criteria in § 150A$^1$/$_2$. See G. L. c. 111, § 150A. The DEP's interpretation of the regulation is consistent with the shared responsibility for enforcing the site suitability criteria articulated in § 150A.

4. *The supplemental fee.* The board cross-appeals from the Superior Court judgment preventing it from recovering a supplemental fee in the amount of $20,482.29 for the costs incurred by the board in obtaining technical assistance for the site assignment hearing. In addition to an application fee assessed pursuant to 310 Code Mass. Regs. § 16.30(1)(a), the regulations permit the local board, after the commencement of the public hearing, to charge a supplemental fee for extraordinary technical expenses but only if such assistance is critical to the determination according to enumerated criteria, and the applicant is permitted to appeal the assessment of the fee to the hearing officer. 310 Code Mass. Regs. § 16.30(2). The board assessed the supplemental fee based on its own rule authorizing fees for outside consultants. The board's rule provides that, if an applicant's fee becomes insufficient to cover the board's costs, the board "may require the applicant to pay an additional

---

[12]TBI contends that the interpretation of 310 Code Mass. Regs. § 16.40(4)(i) is not the governing interpretation of the regulation. TBI points to a recent "discussion document" of the DEP that accompanied proposed modifications to 310 Code Mass. Regs. §§ 16.00 et seq. (1994). These comments do not change our analysis. The comments made by the DEP refer to 310 Code Mass. Regs. § 16.40(4)(j) and not 310 Code Mass. Regs. § 16.40(4)(i), the regulation at issue. Further, the comments involve proposed modifications to the regulations and were written well after the board's siting decision.

review fee to cover these costs, provided these costs are reasonable and directly related to the project undergoing review." The board does not require a showing of compelling need for the information and does not provide the applicant a right to appeal from the supplemental fee. The Superior Court judge ruled that the board cannot assess a supplemental fee for a hearing held under G. L. c. 111, § 150A, unless it adheres to the specific requirements in the DEP regulations. Because the board did not follow these requirements, he concluded that the supplemental fee was improperly assessed. We agree.

The board concedes that it did not follow the DEP regulations for the assessment of the supplemental fee. Rather the board asserts that its rule was promulgated pursuant to G. L. c. 44, § 53G, and that the board has authority, independent of the DEP regulations and § 150A, to assess the supplemental fee. The board also argues that, even if the DEP regulations govern the assessment of the supplemental fee, application of the board's rule does not undermine the purpose of § 150A and the DEP regulations; therefore no conflict between State and local law exists.

General Laws c. 44, § 53G, does not authorize a local board to assess a supplemental fee, but only authorizes a local board to deposit any fees collected in a special account. The section refers to several other statutory provisions, but only one of those provisions, G. L. c. 111, § 31, applies to local boards, and that statute only authorizes local boards to adopt reasonable health regulations. Thus, neither provision authorizes local boards to assess technical assistance fees for site assignment hearings.

Even if the board were correct that G. L. c. 44, § 53G, and G. L. c. 111, § 31, authorize fee assessments, such a general grant of authority must yield to the more specific provisions of § 150A. It is a basic canon of statutory interpretation that "general statutory language must yield to that which is more specific." *Risk Mgt. Found. of Harvard Med. Insts., Inc.* v. *Commissioner of Ins.,* 407 Mass. 498, 505 (1990). Of the two statutes at issue, § 150A is more specific. Section 53G applies to fees for numerous local board proceedings, while § 150A governs site assignment proceedings and provides explicitly that "the application fee shall be established in accordance with rules and regulations promulgated by the department." We reconcile these statutory provisions by concluding that the

specific requirements enacted pursuant to § 150A govern fee assessments for site assignment hearings, while the more general provisions of § 53G govern other local board proceedings.[13]

The board contends that its rule is consistent with § 150A and the related DEP regulations. A local board may not adopt regulations that are inconsistent with State law. *Patton* v. *Marlborough*, 415 Mass. 750, 751-752 (1993). We will only invalidate a local regulation "when either the legislative intent to preclude such local action is clear, or, absent plain expression of such intent, the purpose of the statute cannot be achieved." *Take Five Vending, Ltd.* v. *Provincetown*, 415 Mass. 741, 744 (1993), quoting *Grace* v. *Brookline*, 379 Mass. 43, 54 (1979) (standard for invalidating local bylaw or ordinance). *Patton* v. *Marlborough, supra* (standard for invalidating local regulation same as for bylaw or ordinance). The regulations promulgated by the DEP pursuant to § 150A limit the circumstances in which a supplemental fee may be assessed and provide procedural mechanisms to assure that any such fees are reasonable. To permit the board to circumvent the safeguards prescribed by DEP regulations would undermine the legislative intent to assure that supplemental fees are assessed reasonably and fairly. Thus, the application of the board's rule is inconsistent with § 150A and cannot be applied in a procedure for a site assignment hearing.

5. *Conclusion.* We have considered TBI's challenges to the site assignment determination and conclude that the board's decision denying the site assignment application was proper. We also conclude that the board improperly assessed TBI a supplemental fee for extra costs incurred during the site assignment hearings. The Superior Court was correct in affirming the

---

[13]The board also argues that 310 Code Mass. Regs. § 16.30(1)(d) permits the board to assess the supplemental fee under G. L. c. 44, § 53. The regulation provides that the DEP regulations do not modify the right of local boards to assess or collect fees pursuant to other statutes or municipal ordinances. The board's reading of the regulation is too broad. The purpose of the provision is to protect a local board's ability to assess fees for proceedings or purposes not contemplated by § 150A. The board's interpretation would render the fee regulations merely suggestive because the board could overrule the specific provisions by any regulation that it might enact. We do not read this regulation as authorizing the board to ignore entirely the procedure for assessing fees contained in the DEP regulations.

board's decision to deny the application and in reversing the board's assessment of a supplemental fee.

*Judgment affirmed.*