# United States Court of Appeals
## For the First Circuit

No. 13-2365

ALBERT DAVIDSON, as Guardian of Marilyn Davidson;
REGINA DAVIDSON, as Guardian of Marilyn Davidson,

Plaintiffs, Appellants,

v.

ELIN HOWE, as Commissioner of the Massachusetts Department of
Developmental Services,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson, Circuit Judge,
and Smith,[*] District Judge.

Margaret M. Pinkham, with whom Elise Busny and Pinkham Busny
LLP were on brief, for appellants.
Timothy J. Casey, Assistant Attorney General, with whom Martha
Coakley, Attorney General of Massachusetts, was on brief, for
appellee.

April 16, 2014

_____

[*] Of the District of Rhode Island, sitting by designation.

**LYNCH, Chief Judge.** Plaintiffs Albert and Regina Davidson are guardians of 70-year-old Marilyn Davidson (whom we refer to as "Marilyn"), who is in state care. They appeal from the district court's denial of a preliminary injunction in an action purported to be brought under the federal Medicaid Act and various implementing regulations. Davidson v. Howe, No. 1:13-cv-12634-WGY (D. Mass. Oct. 29, 2013). Plaintiffs sought to enjoin Marilyn's transfer from the Fernald Developmental Center, her home since 1985 and which was being closed, to her new home at the Wrentham Developmental Center. Both are Intermediate Care Facilities ("ICFs") for the intellectually disabled operated by the Massachusetts Department of Developmental Services ("DDS").

On appeal, the Davidsons argue in their briefs that the district court erred in denying the injunction and in holding that the statutory and regulatory provisions cited in their complaint, 42 U.S.C. § 1396a(a)(31) and 42 C.F.R. § 483.430, do not create a private right of action.

The Commonwealth argues that plaintiffs' case should be dismissed because the claims for injunctive and declaratory relief have been rendered moot by Marilyn's completed transfer to Wrentham, and that plaintiffs' claim for money damages is barred by the Eleventh Amendment. We agree that the claims for injunctive and declaratory relief in the case are moot. The case does not raise issues which fall into an exception for mootness. We also

-2-

hold that the damages claim is barred by the state's Eleventh Amendment immunity. We do not reach the question of whether there is a private right of action under the statute and accompanying regulations.

I.

Marilyn is intellectually disabled and has been in DDS care for most of her life. Marilyn was first admitted to Fernald at age six in 1949. At age sixteen, Marilyn was transferred to Metropolitan State Hospital. Other than a short period when she lived in Westborough State Hospital, she remained at Metropolitan State Hospital until 1985, at which time she was transferred back to Fernald. In 2003, the Commonwealth announced that it would close Fernald, described as "by far the most costly of the ICFs to run and the most seriously noncompliant with the Americans with Disabilities Act of 1990[, 42 U.S.C. § 12101 et seq.]."[1] M.D. ex rel. Davidson v. Dep't of Developmental Servs. ("Davidson I"), 83 Mass. App. Ct. 463, 464 n.4, 985 N.E.2d 863, 864 n.4, review denied, 465 Mass. 1107, 989 N.E.2d 900 (2013). In 2008, after protracted litigation, this court held that the Commonwealth could

---

[1] In budgetary appropriations from 2004 to 2007, the Massachusetts legislature directed DDS (then the "Department of Mental Retardation") to take measures to consolidate or close its six ICFs for the intellectually disabled. Ricci v. Patrick, 544 F.3d 8, 12 (1st Cir. 2008). Among the reasons cited by the legislature were "avoid[ing] discrimination against mentally disabled persons by promoting their placement into community settings" and using available resources for the care of the intellectually disabled more efficiently. Id.

close Fernald without re-opening the landmark 1993 consent decree, see Ricci v. Okin ("Ricci III"), 823 F. Supp. 984 (D. Mass. 1993), that brought to an end more than two decades of institutional reform litigation concerning the intellectually disabled in Massachusetts.[2] Ricci v. Patrick ("Ricci V"), 544 F.3d 8, 15-22 (1st Cir. 2008).

Under the Ricci consent decree, certain disputes about treatment of class members are submitted to the state system. See id. at 20. There were extensive state administrative and judicial proceedings leading up to Marilyn's transfer from Fernald. Following this court's decision in Ricci V, DDS began to plan Marilyn's transfer from Fernald. DDS discussed with plaintiffs various alternative placements including at the two ICFs that would remain in operation (Wrentham and the Hogan Regional Center) as well as at state- and vendor-run community-based facilities. Davidson I, 83 Mass. App. Ct. at 474, 985 N.E.2d 863 at 871. Plaintiffs made plain that they opposed Marilyn's transfer from Fernald. Id. In May 2010, DDS gave plaintiffs notice of its specific plan to transfer Marilyn from Fernald to Wrentham. Id. at 465, 985 N.E.2d at 865; see Mass. Gen. Laws ch. 123B, § 3. Plaintiffs objected and DDS referred the matter to the

_____

[2] Marilyn is a member of the Ricci class, entitling her to certain specialized supports and services for as long as she needs them. See 115 Mass. Code Regs. § 6.05 (defining the Ricci class and services available to class members).

-4-

Massachusetts Division of Administrative Law Appeals. Davidson I, 465 Mass. App. Ct. at 465, 985 N.E.2d at 865; see Mass. Gen. Laws ch. 123B § 3. Chapter 123B, § 3 of Massachusetts General Laws is a state law providing an administrative due process mechanism for review of agency decisions, followed by a mechanism for judicial review in the state courts. An evidentiary hearing was held before an administrative magistrate. The magistrate approved the transfer, concluding that Marilyn's transfer to Wrentham "would result in improved services and quality of life and was in her best interest."[3] Davidson I, 465 Mass. App. Ct. at 465, 985 N.E.2d at 865; see Mass. Gen. Laws ch. 123B, § 3.

Plaintiffs sought state judicial review of the magistrate's decision; the Superior Court affirmed. Davidson I, 465 Mass. App. Ct. at 465, 985 N.E.2d at 865; see Mass. Gen. Laws ch. 30A, § 14(7). Plaintiffs appealed the Superior Court decision; in April 2013, the Massachusetts Appeals Court affirmed. Davidson I, 83 Mass. App. Ct. at 465, 985 N.E.2d at 865. And, in June 2013, the Massachusetts Supreme Judicial Court denied further appellate

---

[3] The magistrate declined to consider plaintiffs' various federal law challenges to the proposed transfer, holding that Mass. Gen Laws. c. 123B, § 3 limited his authority to determining whether the transfer would be in Marilyn's best interest. See Davidson I, 83 Mass. App. Ct. at 466, 985 N.E.2d at 865; see also Box Pond Ass'n v. Energy Facilities Siting Bd., 435 Mass. 408, 416, 758 N.E.2d 604, 611 (2001) (holding that an agency's interpretation of its statutory mandate will not be disturbed unless it is "patently wrong, unreasonable, arbitrary, whimsical, or capricious" (quoting TBI, Inc. v. Bd. of Health of N. Andover, 431 Mass. 9, 17, 725 N.E.2d 188, 194 (2000)) (internal quotation mark omitted)).

-5-

review, see 465 Mass. 1107, 989 N.E.2d 900. At this point, plaintiffs had exhausted all means of challenging the proposed transfer under Massachusetts law.

DDS continued to plan for Marilyn's transfer. On August 22, 2013, DDS held a meeting with plaintiffs and Fernald and Wrentham staff members to update Marilyn's Individual Transition Plan ("ITP"). Under the updated ITP, Marilyn was scheduled to move to Wrentham on October 22, 2013.

On October 18, 2013, plaintiffs filed a complaint in federal district court alleging that the ITP for Marilyn's transfer violated the federal Medicaid statute and various implementing regulations.[4] See 42 U.S.C. § 1396a(a)(31); 42 C.F.R. § 483.430. That same day, plaintiffs filed a motion for a preliminary injunction, seeking to delay Marilyn's transfer from Fernald to Wrentham until such time as DDS adopted an appropriate transition plan.

The district court held an initial hearing on October 21, during which it directed the parties to file additional briefing on whether the various federal regulations cited in the complaint created a private right of action and, if so, what legal standard the court was to use to adjudicate plaintiffs' claims. Plaintiffs

---

[4] Plaintiffs have abandoned any claims under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and equal protection under 42 U.S.C. § 1983.

filed an amended complaint on October 27. On October 28, the district court held a second hearing, during which the court denied plaintiffs' request for injunctive relief on the ground that the regulations cited in the original complaint did not create a private right of action, but nonetheless allowed plaintiffs to file an amended complaint.[5] The court held further that Marilyn's transfer could proceed on October 31 absent a stay from this court. Plaintiffs appealed and asked this court for a stay pending appeal. This court denied plaintiffs' request for a stay on October 30, reasoning that, even if plaintiffs had a private right of action, the court "ha[d] no confidence at this stage that staying the transfer would do Marilyn more good than harm."[6] Marilyn was transferred the next day to Wrentham and has continued to reside there.

## II.

We take up the question of mootness. In their briefs, plaintiffs took the position the case was not moot because they say they have ongoing claims for declaratory and injunctive relief as to Marilyn's care and so fall under an exception to the mootness

---

[5] In so doing, the district court appears to have authorized retroactively the amended complaint filed by plaintiffs the previous day.

[6] We relied on testimony in affidavits accompanying the Commonwealth's response to plaintiffs' motion to stay. In those affidavits, both Marilyn's physician and her psychiatrist stated that further delay would be contrary to Marilyn's best interest.

doctrine, and because they have a remaining claim for damages from the transfer. At oral argument, counsel for plaintiffs agreed that the declaratory and injunctive relief originally sought, both regarding Marilyn's now-inactive ITP, are now moot.

"The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed." Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops ("ACLU"), 705 F.3d 44, 52 (1st Cir. 2013) (quoting Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003)) (internal quotation marks omitted). "If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." Mangual, 317 F.3d at 60. "The burden of establishing mootness rests with the party invoking the doctrine . . . ." ACLU, 705 F.3d at 52.

Here, the transfer from Fernald to Wrentham has been completed and the administrative plan under which the transfer was effectuated is no longer in effect as to Marilyn. Absent a cognizable claim for damages, when a challenged plan goes out of effect, "there is literally no controversy left for the court to decide -- the case is no longer 'live.'" ACLU, 705 F.3d at 53 (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). More still, a court can provide no meaningful relief to the challenging party since, once the plan ceases to be operative, there is no plan

left to enjoin, cf. New Eng. Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 18 (1st Cir. 2002), and, "[w]ith limited exceptions, . . . issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory." ACLU, 705 F.3d at 53.

Plaintiffs maintain that their original complaint is not moot, first because their case nonetheless fits an exception to the mootness doctrine, and second because they have a cognizable claim for damages.  Both arguments fail.

A.        "Capable of Repetition, Yet Evading Review"

Plaintiffs argue that the issues presented are "capable of repetition, yet evading review."  S. Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911); see, e.g., In re Grand Jury Proceedings, 744 F.3d 211, 218-19 (1st Cir. 2014); ACLU, 705 F.3d at 56-57.  This exception to the mootness doctrine applies only in "exceptional situations."  City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983).  Plaintiffs must show that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  Weinstein v. Bradford, 423 U.S. 147, 149 (1975).

The Davidsons cannot meet those standards.  In fact, they litigated in the state administrative and judicial systems the

-9-

questions about the appropriateness of Marilyn's transfer for over three years.  Their state litigation ended in June 2013; they filed this federal suit four months later.

In any event, plaintiffs have done nothing to show a "'reasonable expectation' or 'demonstrated probability,'" ACLU, 705 F.3d at 57 (quoting Murphy v. Hunt, 455 U.S. 478, 483 (1982) (per curiam)), that Marilyn "will again be subjected to the alleged illegality" as to her transfer, id. (internal quotation marks omitted) (quoting Lyons, 461 U.S. at 109).  DDS insists that it has no plan to transfer Marilyn again.  Plaintiffs make no contrary allegation.  Fernald has now been closed.

Instead, plaintiffs try to reshape their case.  They now contend that DDS, post-transfer, is likely to afford Marilyn inadequate care, in contravention of unspecified Medicaid regulatory requirements.  In their original complaint, plaintiffs alleged that adherence to the ITP for Marilyn's transfer from one ICF to another would result in undue harm to Marilyn by requiring her to transition without adequate precautions.  This is the only "alleged illegality" at issue, and the transfer has been completed.

If plaintiffs have new complaints based on Marilyn's post-transfer care, they must utilize their state remedies.  See Ricci V, 544 F.3d at 20 ("The Disengagement Order and state regulations provide a procedure and a place where individual disputes about adequacy of the services resulting from the ISP

-10-

process may be heard. . . . Again, the Disengagement Order commits these disputes to resolution in a state forum and under state law and thus provides no basis for federal court intervention."); <u>Ricci III</u>, 823 F. Supp. at 988 ("Individual ISP disputes shall be enforced solely through the state ISP process.").

B.        <u>Claim for Damages</u>

Plaintiffs' claim for damages is squarely foreclosed by the Commonwealth's Eleventh Amendment immunity from suit for damages in federal court.[7] Though the district court did not reach this issue, we deal with it because plaintiffs have directly argued the issue to us as part of mootness, in the interest of efficiency, and because the record makes the issue manifest. <u>See</u>, <u>e.g.</u>, <u>In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)</u>, 348 F.3d 16, 26 (1st Cir. 2003). As one commentator has noted, "[a] damages claim suffices to avoid mootness only if <u>viable</u>." 13C

---

[7] At oral argument, plaintiffs argued for the first time that their claim for attorney's fees under 42 U.S.C. § 1983 is, by itself, enough to keep this a live case or controversy. This argument is waived. <u>DeCaro</u> v. <u>Hasbro, Inc.</u>, 580 F.3d 55, 64 (1st Cir. 2009) ("It is common ground that contentions not advanced in an appellant's opening brief are deemed waived."). It also fails. The Supreme Court has stated flatly that an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." <u>Lewis</u> v. <u>Cont'l Bank Corp.</u>, 494 U.S. 472, 480 (1990); <u>see also</u> <u>Diamond</u> v. <u>Charles</u>, 476 U.S. 54, 70-71 (1986) ("[T]he mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III.").

Wright & Miller, Federal Practice & Procedure § 3533.3 (3d ed. 2003) (emphasis added).

"[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." Edelman v. Jordan, 415 U.S. 651, 663 (1974). This is true whether the named defendant is the state itself or, as here, a state official in her official capacity. Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) ("As a general matter, the Eleventh Amendment bars suits in federal courts against unconsenting states (including 'official capacity' suits against state hierarchs)."); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (citation omitted)).

This case does not fit into any exception to Eleventh Amendment immunity. First, Congress may abrogate a state's sovereign immunity through "appropriate legislation," Va. Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1638 (2011); "[s]econd, a State may waive its sovereign immunity by consenting to suit," Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). This court "will find waiver only where stated 'by the most express language or by such

-12-

overwhelming implications from the text as [will] leave no room for any other reasonable construction.'"  Edelman, 415 U.S. at 673 (alteration in original) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)).  Other than by an express statement, a state can waive its immunity by clear declaration that it intends to submit itself to the jurisdiction of a federal court, Coll. Sav. Bank, 527 U.S. at 676, by participating in a federal program that requires waiver of immunity as an express condition, see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 246-47 (1985), or by affirmative litigation conduct, Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 620 (2002).

"Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000) (internal quotation marks omitted) (quoting Dellmuth v. Muth, 491 U.S. 223, 228 (1989)).  The provisions of the Medicaid Act upon which plaintiffs rely do not contain anything approaching an "unequivocal[] express[ion]" of an intent to abrogate.[8]  Fla.

<hr />

    [8]  Plaintiffs rely principally upon 42 U.S.C. § 1396a(a)(31), which provides that a State Plan for medical assistance must:
        with respect to services in an intermediate care facility for the mentally retarded (where the State plan includes medical assistance for such services) provide, with respect to each patient receiving such services, for a written plan of care, prior to admission to or authorization of benefits in such facility, in accordance with regulations of the Secretary, and for a regular

-13-

Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank, 527 U.S. 627, 635 (1999) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55 (1996); see also Fla. Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147, 150 (1981) (per curiam) (holding state immune from suit where plaintiffs were seeking retroactive relief for alleged insufficient Medicaid reimbursement). Plaintiffs make no argument to the contrary.

As to waiver, "[s]tates do not waive their Eleventh Amendment immunity merely by participating in the Medicaid program." Greenless v. Almond, 277 F.3d 601, 606 n.6 (1st Cir. 2002); see also Edelman, 415 U.S. at 673 ("The mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts."). Nor does a state waive its immunity by "defend[ing] itself" upon being "haled into federal court as a defendant against its will." Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v. González-Feliciano, 695 F.3d 83, 104 (1st Cir. 2012), cert. denied, 134 S. Ct. 54 (2013). Plaintiffs' claim for damages is barred by the Eleventh Amendment.

---

program of independent professional review (including
medical evaluation) which shall periodically review his
need for such services[.]

III.

We remand this case to the district court with instructions to dismiss plaintiffs' claim for damages as barred by the Eleventh Amendment and to dismiss plaintiffs' claims for declaratory and injunctive relief as moot.[9]  No costs are awarded.

---

[9]  While this appeal was pending, the district court denied, on futility grounds, plaintiffs' motion to file a second amended complaint.