Fabricant, Judith, J.
*473 INTRODUCTION
This action presents plaintiffs’ challenge to certain regulations issued by the Department of Public Health (the “D epartment”) under the Act for the Humanitarian Medical Use of Marijuana, which the voters enacted by initiative petition in 2012. Before the Court is the plaintiffs’ motion for preliminary injunction.[3] After hearing, for the reasons that will be explained, the motion will be denied.
BACKGROUND
On November 6, 2012, the voters approved a ballot initiative entitled An Act for the Humanitarian Medical Use of Marijuana. The resulting statute, St. 2012, c. 369, §§1 to 17, has been codified at G.L.c. 94C App., §§1-1 to 1-17. The stated purpose of the Act is “that there should be no punishment under state law for qualifying patients, physicians and health care professionals, personal caregivers for patients, or medical marijuana treatment center agents for the medical use of marijuana . . .” St. 2012, c. 369, §1. Massachusetts law prohibits the distribution and cultivation of marijuana except as provided in the Act. See G.L.c. 94C, §32C.
The Act permits a qualifying patient, defined as “a person who has been diagnosed by a licensed physician as having a debilitating medical condition,” to engage in the medical use of marijuana. St. 2012, c. 369, §§2(K), 4. After registering with the Department, a qualifying patient may obtain medical marijuana from an entity that the Act refers to as a “medical marijuana treatment center,” and that the Department’s regulations refer to as a “dispensaiy.” See id., §§9, 12; 105 Code Mass.Regs. §§725.004, 725.015. A not-for-profit entity registered as a dispensary may lawfully “acquire, process, possess, transfer, transport, sell, distribute, dispense, and administer marijuana for medical use.” St. 2012, c. 369, §9(A), (B). To become a registered dispensary, an entity must submit an application to the Department providing specified information, pay a registration fee, and adopt operating procedures consistent with Department regulations. Id. The Act authorizes the Department to register “up to thirty-five” dispensaries in the first year after the effective date of the Act, with at least one in each county and not more than five in any one county.[4] The Department may increase the number of registrations in future years if it determines that the number of dispensaries “is insufficient to meet patient needs.” Id., §9(C). Dispensaiy agents must also register with the Department. Id., §§2(E), 10(A).[5]
A qualifying patient must generally obtain medical marijuana from a dispensary. The Act provides an exception, however, in the form of a “cultivation registration,” for a qualifying patient whose “access to a [dispensaiy] is limited by verified financial hardship, a physical incapaciiy to access reasonable transportation, or the lack of a [dispensaiy] within a reasonable distance of the patient’s residence.” Id., §11. Cultivation registration allows “the patient or the patient’s personal caregiver to cultivate a limited number of plants, sufficient to maintain a 60-day supply of marijuana, and shall require cultivation and storage only in an enclosed, locked facility.” Id. The Act defines a personal caregiver as “a person who is at least twenty-one (21) years old who has agreed to assist with a qualifying patient’s medical use of marijuana.” Id., §2(J). The qualifying patient must submit to the Department the name, address, and date of birth of his or her personal caregiver. Id., §12(A)(2)(b).
Section 11 of the Act, the same section that authorizes cultivation registrations, provides that: ‘The [D] epartment shall issue regulations consistent with this section within 120 days of the effective date of this law.” Section 13 of the Act requires the Department to promulgate regulations within 120 days to implement sections 9 through 12 of the Act, as well as to set application fees for dispensaries “so as to defray the administrative costs of the medical marijuana program and thereby make this law revenue neutral.” Sections 9 through 12, as described supra, govern the registration of dispensaries, the registration of dispensary agents, hardship cultivation registrations, and medical marijuana registration cards for qualifying patients and personal caregivers. Pursuant to these statutory directives, the Department has promulgated regulations addressing each of these topics. See 105 Code Mass.Regs. §§725.001-725.800.
Regarding cultivation registrations, the regulations include §725.020 (registration of personal caregivers), §725.025 (responsibilities of personal caregivers), and §725.035 (hardship cultivation registration). Under these provisions, a qualifying patient with a cultivation registration, or that person’s personal caregiver may “cultivate a limited number of plants sufficient to maintain a 60-day supply of marijuana solely for that patient’s use . . .” §725.035(A), (G). A qualifying patient may designate up to two personal caregivers to cultivate marijuana at a single location on the patient’s behalf. §725.020(E). Except in the case of certain specified professional caregivers, and family members of more than one qualifying patient, “an individual may not serve as a personal caregiver for more than one registered qualifying patient at one time.” §725.020(D). The location of cultivation must be either the patient’s or the personal caregiver’s primary residence, §725.035(B)(4), and the patient or personal caregiver “must have the registration available at the site of cultivation.” §725.035(N). “At any given location, cultivation may occur pursuant to only one hardship cultivation registration, absent proof that more than one registered qualifying patient resides at the location.” §725.035(E). Apersonal caregiver “may not . . . [c]ultivate marijuana for purposes of selling or providing marijuana to anyone other than the registered qualifying patient.” §725.025(B)(4).
The Department has granted provisional registrations to eleven dispensaries, but no dispensaries are *474 yet operational; the Department expects that registered dispensaries will become operational between November of 2014 and February of 2015. Until dispensaries become operational, the Department treats all qualifying patients as having a hardship sufficient to qualify for cultivation registration.
According to the complaint and affidavits submitted by the plaintiffs, William Downing is the principal of Care Givers Connection, LLC, which does business under the name Yankee Care Givers. Its purpose is to provide care to persons with debilitating medical conditions. The other fifteen named plaintiffs are individuals who have debilitating medical conditions, and are registered with the Department as qualifying patients. They are among over a thousand qualifying patients who have designated Downing as their personal caregiver. In that capacity, until June 25, 2014, Downing provided marijuana to those patients.
On or about June 25, 2014, the Department sent a letter to Downing informing him that his service as a personal caregiver for more than one registered qualifying patient at a time violates 105 Code Mass.Regs. §725.020(D). The letter notified Downing that “YOU MUST IMMEDIATELY CEASE AND DESIST OPERATING AS A PERSONAL CAREGIVER IN VIOLATION OF 105 CMR 725.020(D),” and that “(y]our ‘registration card’ ... is now deemed invalid, effective immediately.” On that same day, the Department sent letters to individuals who had designated Downing as their personal caregiver, including the patient plaintiffs, notifying them that he had been designated by more than one patient, and could not serve as such under the Department’s regulations. The letter explained that the qualifying patients were not themselves in violation of the regulations, and that each patient could “choose a new personal caregiver, or determine that you no longer require the services of a personal caregiver at this time.”
Plaintiffs filed this action in the Supreme Judicial Court for Suffolk County on July 3, 2014. That Court transferred the case to this Court by order dated July 8, 2014, and the case was entered in this Court on June 9, 2014. The complaint challenges certain of the Department’s regulations under the Act, and seeks declaratory and injunctive relief pursuant to G.L.c. 231A, §1, and G.L.c. 30A, §7. The Court heard the plaintiffs’ motion for preliminary injunction on June 16, 2014. For purposes of the present motion, plaintiffs focus their challenge on 105 Code Mass.Regs. §725.020(D) (2013), which limits an individual to serving as a personal caregiver for one qualifying patient at a time. Plaintiffs contend that that provision exceeds the Department’s authority under the Act, and violates their constitutional right to freedom of association. They also argue that the Department has misinterpreted the regulation in applying it to Downing. They seek an injunction that would suspend application of the regulation to Downing’s activities as a personal caregiver, and bar the Department from notifying qualifying patients that Downing may not serve as their personal caregiver.
DISCUSSION
To succeed on a motion for a preliminary injunction, a plaintiff must demonstrate, “(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction.” Tri-Nel Mgmt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001), quoting Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). Where a plaintiff is seeking an injunction to enjoin governmental action, a court must “also consider whether the grant of an injunction would adversely affect the public interest. ” Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004).
For purposes of the present motion, the issue on the merits is the validity of the regulation limiting a personal caregiver to serving one qualifying patient, 105 Code Mass.Regs. §725.020(D), and the application of that regulation to Downing. Thus, to warrant a preliminaiy injunction, the plaintiffs must show that they are likely to succeed in establishing that that regulation is invalid, or that it is not properly applied to Downing. See Jean v. Massachusetts State Police, 492 F.3d 24, 27 (1st Cir. 2007) (“[i]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity”).
A plaintiff attacking an administrative regulation bears a “formidable burden,” as the Court gives as much deference to an agency regulation as it would to a legislative enactment. See Greenleaf Fin. Co. v. Small Loans Regulatory Bd., 377 Mass. 282, 293 (1979); Professional Fire Fighters of Mass. v. Commonwealth, 72 Mass.App.Ct. 66, 80 (2008) (“[a] duly promulgated regulation is presumptively valid; like a statute, it enjoys all reasonably favorable interpretations for its effective operation”). To challenge a regulation successfully, a plaintiff must prove “that the regulation is illegal, arbitrary, or capricious,” and “the absence of any conceivable ground upon which [the regulation] may be upheld.” Beilin v. Kelley, 435 Mass. 261, 265 (2001), quoting Borden, Inc. v. Commissioner of Pub. Health, 388 Mass. 707, 722 (1983). A court “must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.” Id. at 266, quoting Borden, 388 Mass. at 723. “A regulation . . . need not necessarily find support in a particular section of [the enabling statute]; it is enough if it carries out the scheme or design of the chapter and is thus consistent with it.” Pepin v. Division of Fisheries & Wildlife, 467 Mass. 210, 222 *475 (2014). “An agency has broad and reasonably implied powers to promulgate regulations, may exercise considerable leeway in the interpretation of its enabling legislation, and may define the legislation more precisely by regulation.” Professional Fire Fighters of Mass., 11 Mass.App.Ct. at 80. “[Enforcement of such regulations should be refused only if they are plainly in excess of legislative power." Berrios v. Department of Pub. Welfare, 411 Mass. 587, 596 (1992).
The plaintiffs argue that the regulation at issue exceeds the Department’s authority under the Act, is not rationally related to the purpose of the Act, and is arbitrary and capricious. They contend that the Act did not authorize the Department to regulate the qualifying patient-personal caregiver relationship, and that limiting the number of qualifying patients a personal caregiver may serve is inconsistent with the purpose of the Act, which is to provide qualifying patients access to medical marijuana.
The Court is not persuaded. Among the purposes of the Act, plainly expressed in its provisions, is to establish a carefully controlled system for the cultivation and distribution of marijuana for medical use. The general rule established by the Act is that only dispensaries, registered with the Department and operating according to strict and explicit limitations, may cultivate and dispense marijuana on a large scale. The statutory exception for cultivation registration, set forth in § 11 of the Act, is narrowly tailored to address specifically defined circumstances of hardship by allowing a single patient or that patient’s personal caregiver to cultivate a small quantify of marijuana for that patient’s sole use. The Act directs the Department to maintain the narrowness of that exception by issuing “regulations consistent with” that section. St. 2012, c. 369, §11.
A personal caregiver who delivers marijuana to large numbers of patients, as the complaint alleges Downing was doing until the Department directed him to stop, functions in substance as an unregistered and unregulated dispensary, in direct violation of the purposes and explicit provisions of the Act. The limitation of each personal caregiver to one qualifying patient prevents such conduct, thereby ensuring that the limited exception does not swallow the general rule. The regulation, the Court concludes, is consistent with the statutory purpose, is neither arbitrary nor capricious, and is therefore within the regulatory authority conferred on the Department by the Act.
Plaintiffs argue also that the regulation violates their right to freedom of association as guaranteed by the First Amendment of the United States Constitution. They contend that the Act confers on them a “liberty interest” in the use marijuana for medical reasons; that they therefore have a constitutionally protected right to enter “intimate human relationships” for such use, and that the regulation interferes with that right. Again, the Court is not persuaded.
Freedom of association “encompasses the right to enter into and maintain certain intimate human relationships, and a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion.” American Lithuanian Naturalization Club, Athol, Mass., Inc. v. Board of Health of Athol, 446 Mass. 310, 324 (2006) (internal quotations omitted); see Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984). “Freedom of association guarantees an opportunity for people to express their ideas and beliefs through membership or affiliation with a group.” Caswell v. Licensing Comm’n for Brockton, 387 Mass. 864, 871-72 (1983) (denial of license to operate video game arcade did not infringe on potential patrons’ freedom of association).
The regulation at issue here does not infringe the qualifying patients’ right to maintain relationships or to engage in any expressive activities. The regulation does not prevent qualifying patients and personal caregivers from associating or assembling to discuss medical marijuana related issues or to petition the government; it merely limits who may cultivate and dispense marijuana to a qualifying patient. See Conejo Wellness Ctr., Inc. v. Agoura Hills, 154 Cal.Rptr.3d 850, 872 (Cal.Ct.App. 2013) (ordinances banning medical marijuana dispensaries “in no way affect the rights of . . . members to associate and discuss medical marijuana cultivation, storage, and use with whomever they please”); see also Commonwealth v. Disler, 451 Mass. 216, 230 (2008) (statute prohibiting use of the internet “for the sexual exploitation of children” did not “prevent the formation of legitimate, constitutionally protected associations or prohibit legitimate, constitutionally protected speech”); American Lithuanian Naturalization Club, 446 Mass. at 324 (smoking ban in private club did not infringe on members’ ability to maintain relationships with each other). As such, the regulation does not infringe on the plaintiffs’ freedom to associate.
Plaintiffs’ fail-back argument is that the Department has erroneously interpreted its regulation and applied it to Downing; what the regulation prohibits, plaintiffs contend, is not an individual holding the position of personal caregiver for more than one patient at a time, but that individual physically dispensing marijuana to more than one patient simultaneously, which Downing did not do. The theory, in the Court’s view, is inconsistent with the plain meaning of the regulation and its purpose, as well as with the principles of judicial review of an agency’s application of its regulations.
A court does not “disturb an agency’s interpretation of its own regulation” unless its “interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious.” TBI, Inc. v. Board of Health of N. Andover, 431 Mass. 9, 17 (2000). Here, the regulation *476 states in pertinent part that, “an individual may not serve as a personal caregiver for more than one registered qualifying patient at one time.” 105 Code Mass.Regs. §725.020(D). The Department interprets the regulation to mean that an individual may not be the personal caregiver for more than one qualifying patient at the same time. That interpretation is entirely consistent with the dictionary definition of the term “serve,” which is “(t]o act in a particular capacity” or “(t]o be of service or use.” The American Heritage Dictionary 1121 (2d ed. 1985).
The Department’s interpretation is also fully consistent with the other provisions of the regulations, quoted supra, which require that the patient specify the location of the cultivation, which must be the home of either the patient or the personal caregiver, and that the person performing the cultivation “have the registration available at the site of cultivation.” The Department’s interpretation also finds support in the provisions that “[a]t any given location, cultivation may occur pursuant to only one hardship cultivation,” and that a personal caregiver may not cultivate marijuana “for purposes of selling or providing marijuana to anyone other than the registered qualifying patient. ” These provisions express, in unequivocal terms, the intention to authorize each personal caregiver to cultivate marijuana only for a single patient, pursuant to that patient’s cultivation registration. The Department’s interpretation is fully consistent with this language and purpose; the plaintiffs’ contrary interpretation is not. Thus, the Department’s interpretation is not “patently wrong, unreasonable, arbitrary, whimsical, or capricious,” and must not be disturbed. See TBI, Inc., 431 Mass. at 17.
The Court concludes that the plaintiffs have failed to satisfy their burden of showing that they are likely to succeed on the merits of their claim. See Tri-Nel Mgmt., 433 Mass. at 219. Given this conclusion, the Court has no occasion to address the other preliminary injunction factors. See Student No. 9, 440 Mass. at 767.
CONCLUSION AND ORDER
For the reasons stated, the Plaintiffs Motion for Preliminary Injunction is DENIED.

The plaintiffs captioned the motion as an application for a temporary restraining order, but did not seek ex parte relief, and proposed a temporary order that would remain in effect for forty-five days. At a hearing on July 16, 2014, with both sides represented, the Court indicated that it would treat the motion as one for a preliminary injunction. The Court allowed the plaintiffs to submit a reply memorandum to address legal issues not addressed in their original papers, which the plaintiffs did on July 21, 2014.

The Act took effect on January 1, 2013.

A dispensary “agent” is defined as “an employee, staff volunteer, officer, or board member” of a dispensary. St. 2012, c. 369, §2(E).