# United States Court of Appeals
## For the First Circuit

No. 07-2025

M.M.R.-Z., a minor child, by and through his parents;
MARIO A. RAMÍREZ-SENDA, on his own behalf, and on behalf of his
minor child, M.M.R.-Z.; HAYDEÉ ZAYAS-ROSARIO, on her own behalf,
and on behalf of her minor child, M.M.R.-Z.; CARMEN HAYDEÉ ROSARIO-
RIVERA, on her own behalf,

Plaintiffs, Appellees,

v.

COMMONWEALTH OF PUERTO RICO; RAFAEL ARAGUNDE, Secretary of
Education, in his official capacity; ELIZABETH ORTEGA, Regional
Supervisor of Special Education, in her official and individual
capacities,

Defendants, Appellants,

EDGAR RIVERA-LUGO, Special Education Teacher, in his official and
individual capacities; AIDA E. RIVERA, School Principal, in her
official and individual capacities; SONIA ROSARIO, Auxiliary
Secretary of Special Education, in her official and individual
capacities; ESCUELA DE LA COMUNIDAD CANEJAS,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille Vélez-Rivé, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,

Torruella, Circuit Judge,

and Selya, Senior Circuit Judge.

_Luis A. Rodríguez-Muñoz_ with whom _Hon. Roberto Sánchez-Ramos_, Secretary of Justice, _Hon. Salvador Antonetti-Stutts_, Solicitor General, _Vivian González_, Deputy Secretary for Litigation, _Eileen Landrón-Guardiola_, _Eduardo A. Vera-Ramírez_ and _Landrón & Vera, LLP_ were on brief for defendants, appellants.

_Nora Vargas-Acosta_ with whom _Wilma E. Reverón-Collazo_ was on brief for appellees.

June 5, 2008

**BOUDIN, <u>Chief Judge</u>.** Plaintiff ("Mario"[1])--a minor who suffers from cerebral palsy among other disabilities--received homebound educational services from the Puerto Rico Department of Education. In September 2001, Mario's grandmother began to suspect that he was being physically and sexually abused by his teacher, Edgar Rivera-Lugo. After further investigation, Mario's family filed a complaint with the police. Rivera-Lugo was arrested and, following a bench trial, was found guilty of misdemeanor aggravated assault and institutional abuse.

Mario, together with his parents and grandmother, then filed suit in federal district court based on the abuse he suffered and the alleged deprivation of educational services in the year-long period following Rivera-Lugo's termination. The defendants named were Rivera-Lugo in his official and individual capacities; Elizabeth Ortega, regional supervisor of special education, in her official and individual capacities; the Commonwealth Secretary of Education in his official capacity; and the Commonwealth of Puerto Rico.

Although the complaint is not crystal clear as to which claims were asserted against which defendants, it did identify as bases for relief Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (2000); section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (2000); Title IX of the Education Amendments of

---

[1]The child, age eight at the time of the incidents, is referred to in the briefs by his initials; we use one of his given names in this decision.

1972, 20 U.S.C §§ 1681-88 (2000); section 1983, 42 U.S.C. § 1983; and various provisions of Puerto Rico law. The complaint sought compensatory damages of $5 million, punitive damages against each defendant and injunctive relief.

Following various motions and orders,[2] defendants Ortega, the Secretary of Education, and the Commonwealth of Puerto Rico sought summary judgment on the federal claims. They argued that they were unaware of Rivera-Lugo's abusive behavior and that when they learned of it they took immediate action to remove him. Alternatively, they argued that they are shielded by qualified immunity (as to Ortega in her individual capacity) or sovereign immunity (for the Commonwealth and the defendants sued in their official capacities).

The magistrate judge, presiding with the consent of the parties, granted summary judgment in part, finding that Rivera-Lugo's supervisors did not participate in or act recklessly with regard to Rivera-Lugo's misconduct. However, the magistrate judge found that material disputes of fact remained regarding defendants' actions following Rivera-Lugo's termination, primarily claims that the defendants had retaliated against Mario for complaining to the

---

[2]The Commonwealth initially sought dismissal on sovereign immunity grounds and ultimately obtained dismissal only of section 1983 claims on this ground. Plaintiffs moved for summary judgment against Rivera-Lugo, arguing that his criminal conviction established his civil liability; the district court granted the motion as to plaintiffs' physical abuse claims, but denied it as to the sexual abuse claims.

police; and the court denied defendants' immunity defenses as to such claims. The abuse claims therefore remain pending only against Rivera-Lugo.

Defendants other than Rivera-Lugo now appeal, invoking our jurisdiction to review on an interlocutory basis a district court's denial of qualified and sovereign immunity defenses. Torres v. Puerto Rico, 485 F.3d 5, 8-9 (1st Cir. 2007). On appeal we review legal rulings de novo. Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Galarza, 484 F.3d 1, 22 (1st Cir. 2007). The qualified immunity and sovereign immunity claims present quite different issues.

The qualified immunity claim is relevant only to Ortega insofar as she was sued for damages in her individual capacity. Qualified immunity is not available to the Commonwealth, Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 705 (1st Cir. 1993), nor to the Secretary of Education because he was sued only in his official capacity, and qualified immunity does not apply to official capacity claims, usually aimed at injunctive relief based on Ex parte Young, 209 U.S. 123, 159-60 (1908). See Nereida-Gonzalez, 990 F.2d at 705.

Plaintiffs' brief on appeal says that the only damages claim asserted against Ortega was under section 1983; and the gravamen of this claim after the summary judgment ruling appears to be that Ortega retaliated against plaintiffs in violation of their

first amendment rights by denying Mario educational services after his family complained to the police. This would arguably be a legitimate claim under section 1983, if it could be factually supported, Powell v. Alexander, 391 F.3d 1, 16-17 (1st Cir. 2004); and such a claim was preserved (although not emphasized) by the complaint.[3]

In addition to the first amendment claim, the magistrate judge also deemed preserved against Ortega a separate claim based on the same denial of services after Rivera-Lugo's termination. This appears to be based on the theory that the denial of services was "discriminatory"--possibly on an equal protection theory. We can find no reference to any such claim in the complaint or in plaintiffs' opposition to summary judgment. We conclude that it was not presented and so think it must be disregarded.

Turning, then, to the retaliation claim against Ortega, the evidentiary basis for such a claim is invisible to us. Although much time passed after Rivera-Lugo was arrested before Mario got new adequate home services, the defendants' motion for summary judgment

---

[3] Section 1983 cannot be used as a vehicle for ADA or other statutory claims that provide their own frameworks for damages. See Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 178-79 (1st Cir. 2007), petition for cert. filed, No. 07-1125 (Mar. 3, 2008) (no section 1983 action against school official premised on violation of Title IX); A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 803-06 (3d Cir. 2007) (no section 1983 action against official for violation of Rehabilitation Act); Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997) (no section 1983 action against official for violation of ADA or Rehabilitation Act).

pointed to substantial evidence in the record developed in the discovery process indicating that resource problems and bureaucratic tangle were the explanation for the admittedly long delay.

In opposing summary judgment on the retaliation claim, the plaintiffs baldly asserted that the delay in furnishing services was based on retaliatory animus but without citing any evidence in the record to support such an assertion. And although the magistrate judge discussed the motion for summary judgment on the retaliation claim, her discussion contains no reference to any such evidence. Her decision merely states that the plaintiffs' claim of retaliation raises a disputed issue of material fact.

Under the case law, an interlocutory appeal is available to review denials of qualified immunity at the summary judgment stage only if based upon an error of law of a kind other than a dispute about the adequacy of evidence. Johnson v. Jones, 515 U.S. 304, 317-18 (1995); Rodriguez-Rodriguez v. Ortiz-Velez, 391 F.3d 36, 40 (1st Cir. 2004). The restriction is purely prudential, being designed to avoid the weighing of the evidence at the interlocutory stage.

Here, defendants do not dispute that under clearly established law, retaliation could give rise to a first amendment claim remediable under section 1983; the only apparent basis for the denial seems to be the court's perception of a factual dispute, namely, whether there was enough evidence of a retaliatory motive to survive summary judgment. Since the qualified immunity denial does

not turn on a legal issue, under Johnson we arguably have no authority to overturn the ruling on interlocutory review.

Conceivably, Johnson's limitation could be disregarded on the ground that in denying qualified immunity the magistrate judge made an error of law in disregarding the need for some evidence of retaliatory intent for the first amendment claim. Cf. Behrens v. Pelletier, 516 U.S. 299, 313 (1996). But it would be a stretch to so construe the magistrate judge's decision. The cleaner course is for her take a fresh look before permitting a seemingly hopeless retaliation claim to proceed to trial

We turn now to the defendants' claim that, in addition, sovereign immunity defeats retaliation claims against the Commonwealth and the official capacity defendants based on three other statutes: the ADA, the Rehabilitation Act and Title IX. Defendants argue that Mario's claim based on delay in providing him special education services after Rivera-Lugo's departure is cognizable only under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, and that the IDEA does not provide for the tort-like damages here sought, Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003); alternatively, they argue that plaintiffs were required to resort to administrative remedies before pursuing their IDEA-like claim. See 20 U.S.C. § 1415(l).

Neither version of the defendants' theory--preemption or exhaustion--is a classic sovereign immunity defense. Indeed, the

plaintiffs say that on interlocutory appeal, we lack jurisdiction to entertain these arguments. But our earlier decision in Nieves-Marquez holds that, on an interlocutory appeal from the rejection of a sovereign immunity defense, the court may entertain certain arguments about the unavailability of monetary damages based on the IDEA. 353 F.3d at 123-24.

Nieves-Marquez concluded, partly on technical and partly on policy grounds, that the substantive IDEA issue--whether it preempted claims under other statutes--was sufficiently intertwined with the classic sovereign immunity defense to permit interlocutory review. Still, Nieves-Marquez limited interlocutory review to an issue of this kind and we do not read it as extending to a defense such as failure to exhaust administrative remedies. Id. at 124; see also Fairley v. Fermaint, 482 F.3d 897, 902-03 (7th Cir. 2007).

Although the IDEA preemption claim is thus before us, it lacks merit. IDEA itself provides that

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities.

20 U.S.C. § 1415(l). Thus, on its face IDEA does not preclude claims against the Commonwealth, or the individual defendants, under the ADA, the Rehabilitation Act or (arguably) Title IX as applied to a disabled child.

-9-

While we have held that relief under these other statutes is not available where "[p]laintiffs' case turns entirely on the rights created by statute in the IDEA," Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 29 (1st Cir. 2006), here plaintiffs' claim is "independently available through other sources of law," namely, the retaliation provisions of the three statutes here invoked.[4] These claims rest on improper retaliatory intent, are by no means mirrors of the IDEA, and are not within the rationale of Diaz-Fonseca.

In the district court, the defendants did make classic sovereign immunity arguments, specifically, that the Commonwealth (and officers sued in their official capacities) were protected under the Eleventh Amendment. These arguments turned primarily on the scope of waiver provisions that appear in two of the relevant statutes and, in the case of the ADA, on the extent of Congress' power to abrogate. Initially the district court granted defendants' motion as to the ADA and Rehabilitation Act claims, but because of intervening changes in governing authority the district court revised its position.

In the end, the district court found that classic sovereign immunity did not apply because of the receipt of federal funds under two of the statutes--the Rehabilitation Act and Title IX-

---

[4]See 42 U.S.C. § 12203(a) (retaliation claim under the ADA); 29 U.S.C. § 794a(a)(2); 34 C.F.R. § 104.61 (incorporating Title VI's retaliation provision into the Rehabilitation Act); Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 171 (2005) (recognizing a retaliation claim under Title IX).

-and a direct abrogation by the ADA of state sovereign immunity. The defendants have not pursued these arguments in this court; the conclusions are at least colorable; and we need not pursue further arguments that have not been preserved on appeal.

Insofar as the appeal presents cognizable legal issues on interlocutory appeal, the judgment of the district court is <u>affirmed</u>. With regard to issues not appealable under <u>Johnson</u>, the appeal is dismissed.

<u>It is so ordered</u>.