# United States Court of Appeals
## For the First Circuit

No. 13-2078

MARIBEL LEBRÓN; FRANCISCO PORTALES; K.F.P.L. MINOR; CONJUGAL
PARTNERSHIP PORTALES-LEBRÓN,

Plaintiffs, Appellants,

v.

COMMONWEALTH OF PUERTO RICO, represented by Governor Alejandro
García Padilla; DEPARTMENT OF EDUCATION OF PUERTO RICO,
represented by its Secretary, Eduardo Moreno Alonso,

Defendants, Appellees,

COLEGIO DE TALLER INTELIGENCIA EMOCIONAL, INC.; MARLYN MENDEZ;
EDWIN R. CANO; CONJUGAL PARTNERSHIP CANO-MENDEZ; A INSURANCE CO.;
B INSURANCE CO.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before
Thompson, Kayatta, and Barron,
Circuit Judges.

Carlos Rodriguez García, with whom Rodriguez García PSC was on
brief, for appellants.
Rosa Elena Pérez-Agosto, Assistant Solicitor General,
Department of Justice, Office of the Solicitor General, with whom
Margarita Mercado-Echegaray, Solicitor General, Department of
Justice, Office of the Solicitor General, was on brief, for
appellees.

October 20, 2014

**THOMPSON, Circuit Judge**.  Maribel Lebrón and Francisco Portales, parents of K.F.P.L. ("the child"), sued the Commonwealth of Puerto Rico and the Puerto Rico Department of Education ("DOE")[1] under numerous state and federal statutes for alleged discrimination and retaliation against their disabled child.  The district court dismissed all the claims against the Commonwealth, and the parents appeal on various grounds.

For the reasons discussed below, we affirm.

### I. BACKGROUND

We recite the facts as they are alleged in the complaint.

In 2008, the child was diagnosed with Asperger's Syndrome, a form of autism that neither party disputes is a disability.  In anticipation of enrolling the five year old in school for the first time, the parents registered him with the DOE in 2008.

Before school started, Lebrón, the child's mother, met with the DOE's Special Education Supervisor regarding school placement.  From the beginning, the parents and the DOE butted heads about how to satisfy the child's educational needs.  Lebrón told the Supervisor in that initial meeting that the child's psychologist had recommended placement in a group of six or fewer

---

[1] We refer to the appellants collectively as "the parents" and the appellees collectively as "the Commonwealth."

While the parents sued a number of defendants, none of the others are involved in this appeal.  We, therefore, address only the Commonwealth defendants in this opinion.

children. The Supervisor said outright that the DOE would not follow that recommendation. Nor would the DOE provide the child with certain vision therapy Lebrón requested. Despite these disagreements, on July 14, 2008, the DOE provided the child his first Individualized Education Plan ("IEP")--a requirement for every disabled public school student.[2]

For reasons not specifically pleaded, around September 2008, the parents began to search for a school in a different area of Puerto Rico. The DOE recommended the parents consider Colegio Taller de Inteligencia Emocional ("Colegio"), a private school. Lebrón visited Colegio and met with the owner, Marlyn Mendez. Lebrón explained to Mendez the child's medical diagnoses, treatments, and special education needs, including the importance of his placement with a small group of children. Mendez indicated that she was able to accommodate the child, and the parents decided to forego public schooling and enroll the child at Colegio.

The parents were pleased with Colegio until 2010. That summer, the child began a biomedical treatment that required him to eat a special diet. Lebrón requested that when the new school year started, she be permitted to go to the school to give the child his lunch each day, until he adapted to his new dietary regime. The

---

[2] It is unclear from the complaint when, exactly, the DOE completed the first IEP; at one point, the parents allege the IEP was in place on July 14, 2008, but on the next page allege that the first IEP was not done until August 28, 2008. The discrepancy is not material to our outcome.

school "sternly prohibited" Lebrón from giving the child his lunch in the cafeteria, where the other children ate, instead requiring that she do so in the playroom. Other problems with the school (the details of which we need not get into) intensified, and Lebrón scheduled a meeting with the president of Colegio, Edwin Cano, to discuss what she considered "discriminatory treatment" on the part of Colegio's administration.

Colegio apparently failed to allay the parents' concerns. Fed up, the parents brought their complaints to the DOE by attempting to file an administrative complaint against Colegio. Maria Melendez, a DOE supervisor, told the parents in a March 8, 2011 meeting that the DOE could not help them because Colegio was a private school.

Dissatisfied with both Colegio and the DOE, the parents filed suit in the Puerto Rico District Court on February 29, 2012, alleging that the defendants[3] violated the Fourteenth Amendment; the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.; and a number of other federal statutes: (1) 42 U.S.C. § 1981; (2) 42 U.S.C. § 1983; (3) 42 U.S.C. § 1988; (4) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (5) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; and (6) the Rehabilitation Act of 1973 ("Rehabilitation

_____

[3] In addition to the Commonwealth, the parents sued Colegio, Mendez, Cano, and the Cano-Mendez conjugal partnership ("the Colegio defendants"), as well as two unnamed insurance companies.

-5-

Act"), 29 U.S.C. § 794. The complaint also sought relief under numerous Puerto Rico laws: Article 2 of the Puerto Rico Constitution; Articles 1054 and 1802 of the Civil Code of Puerto Rico; and Law 44 of July 2, 1985, as amended, P.R. Laws Ann. tit. 1, § 501 et seq.[4] The parents asked for $500,000 for each of the three plaintiffs for emotional distress; $500,000 for each of the three plaintiffs in compensatory damages; $1 million for each of the three plaintiffs in punitive damages; $500,000 in fees; and $10,000 in reimbursement for expenses incurred for private schooling.

The Commonwealth moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), all the claims against it on May 4, 2012. On June 20, 2012, in a brief, one-paragraph decision, the district court dismissed all but the IDEA claim, holding that the "IDEA bars all other claims against the Commonwealth" and the "IDEA does not allow claims as to damages against the State." Concerning the Puerto Rico state law claims specifically, the court held that those causes of action were "barred under the Eleventh Amendment."

After what the Commonwealth describes as a harried discovery process, on April 10, 2013, the parents moved to

_____

[4] The complaint inconsistently cites various Puerto Rico Civil Code Article numbers and statutory provisions. Given the nature of the claims in this case, as well as the parents' briefing, we deduce that the parents intended to plead claims for relief under Article 1054 (P.R. Laws Ann. tit. 31, § 3018), and Article 1802 (P.R. Laws Ann. tit. 31, § 5141), which are negligence statutes.

voluntarily withdraw their remaining IDEA claim against the Commonwealth. The court allowed that motion, and the Commonwealth was dismissed from the lawsuit.

On January 16, 2013, the Colegio defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The court allowed that motion on May 14, 2013. The parents thereafter moved for a reconsideration of the Colegio dismissal.[5] In the motion to reconsider, the parents also asserted (albeit in one paragraph of a 30-page motion) that they "disagree[d] with the Court's decision to dismiss the remaining causes of action in favor of the Commonwealth." Addressing that lone contention, the district court held that because the parents offered "no new arguments, revelation of clear error, discovery of important, new facts, or compelling jurisprudence," it would not reconsider its dismissal of the claims against the Commonwealth.

The parents timely appealed, and now here we are.

## II. STANDARD OF REVIEW

We review a Rule 12(b)(6) dismissal for failure to state a claim de novo. Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 353 (1st Cir. 2013). Our well-established standard of review mandates that we "[s]et[] aside any statements that are merely

---

[5] The parents styled the motion as a "Motion to Amend/Correct Memorandum Opinion," but given that neither party seems to dispute that the motion sought reconsideration, we follow the district court's lead in treating the motion as one to reconsider.

-7-

conclusory" and take a complaint's factual allegations as true to "determine if there exists a plausible claim upon which relief may be granted."[6]  Id.  We make reasonable inferences, drawn from the facts alleged in the complaint, in the pleader's favor.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12-13 (1st Cir. 2011).

### III. DISCUSSION

### A. The Federal Claims

To frame our analysis, we first provide some background on a centerpiece of this lawsuit--the IDEA.

As we have previously emphasized, the IDEA is a "comprehensive statutory scheme" intended "to ensure that all children with disabilities have available to them a free appropriate public education."  Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 58 (1st Cir. 2002) (quoting 20 U.S.C. § 1400(d)(1)(A)).  To protect this statutory right, the IDEA requires public school systems to guarantee disabled children and their parents certain procedural safeguards, such as a right to an administrative hearing if a parent disagrees with the school district's educational plan for a child.  Id.

In stride with this comprehensive scheme, the IDEA limits the remedies available to those aggrieved by a school district's failure to provide a disabled child with a free appropriate public

---

[6] We note that the standard of review articulated in Conley v. Gibson, 355 U.S. 41 (1957), which is relied upon in the parents' brief, is no longer good law, and has not been for several years.

education. For instance, the only monetary damages plaintiffs may recover for an IDEA claim is reimbursement for expenses they incurred for private schooling. Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 19 (1st Cir. 2006).

Plaintiffs in the past have tried to get around the IDEA's limited remedies, as well as its other restrictions, by suing under other federal statutes, such as § 1983, the ADA, and the Rehabilitation Act. But our existing jurisprudence is clear that "where the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983--or any other federal statute for that matter--in an attempt to evade the limited remedial structure of the IDEA." Id. at 29.

Still, Congress has clarified that the IDEA does not restrict plaintiffs' right to sue under other statutes, so long as their cases do not "turn[] entirely on the rights created by statute in the IDEA." Id. Specifically, the IDEA provides:

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities.

M.M.R.-Z. ex rel. Ramírez-Senda v. Puerto Rico, 528 F.3d 9, 14 (1st Cir. 2008) (quoting 20 U.S.C. § 1415(l)). Thus, denying a child a free appropriate public education on account of his disability could, for instance, be a valid basis for a claim under either the

Rehabilitation Act or the ADA, even if the factual basis for those claims might overlap with that of an IDEA claim. <u>D.B. ex rel. Elizabeth B.</u> v. <u>Esposito</u>, 675 F.3d 26, 40 (1st Cir. 2012).

Against that backdrop, the parents in the instant case have argued that the district court erred in dismissing their non-IDEA claims because their complaint sufficiently stated disability-based discrimination and retaliation under the ADA and the Rehabilitation Act, both of which "prohibit discrimination against an otherwise qualified individual based on his or her disability."[7] <u>Calero-Cerezo</u> v. <u>U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004). The Commonwealth disagrees, and urges us to affirm the district court's dismissal; in the Commonwealth's estimation, the ADA, Rehabilitation Act, and other federal statutes "cannot be used to remediate what is essentially a claim seeking remedy under

---

[7] While the parents brought claims under numerous federal statutes, we focus our analysis on the disability-based discrimination and retaliation claims asserted under the ADA, the Rehabilitation Act, and § 1983. The other claims we can more quickly dispose of. First, both 42 U.S.C. § 1981 and 42 U.S.C. § 2000d prohibit race-based discrimination. The complaint provides no factual support for such a theory; the only mention of race or national origin in the complaint is the allegation stating that the child "is of American nationality, of Caucasian race, and suffers from Asperger's Syndrome." We, therefore, affirm the dismissal of these claims for inadequate pleading. Finally, the provision of 42 U.S.C. § 1988 under which the parents seek relief--subsection (b)-- is merely a vehicle by which the parents could have collected attorney's fees for a successful § 1983 claim. As discussed below, we affirm the dismissal of the § 1983 claim, and therefore, § 1988(b) can provide the parents no relief.

IDEA."[8]

As we explain below, we find that regardless of whether the parents' claims overlay completely with their IDEA claim, the parents have not sufficiently pleaded either discrimination or retaliation. Therefore, dismissal of the ADA, Rehabilitation Act, and § 1983 claims was proper.

1. The Discrimination and Retaliation Claims

The only facts in the complaint that even reference the Commonwealth aver that (1) the DOE created the child's IEP in 2008, and (2) when the parents sought to file an administrative complaint against Colegio some three years later, the DOE said it "couldn't do anything since [Colegio] was a private school." Neither party disputes that the parents, on their own accord, abandoned public schooling and enrolled the child at the private school in 2008. And neither party disputes that the parents fault Colegio's staff for treating the child in a discriminatory manner while he was enrolled there.

Given this set of facts, we had trouble even identifying from the complaint the parents' discrimination-based theory of liability against the Commonwealth. Searching for guidance, we

---

[8] As noted above, the district court held only that the "IDEA bars all other claims against the Commonwealth" and that the "IDEA does not allow claims as to damages against the State." The district court did not elaborate its reasoning any further, and we interpret the decision to adopt the rationale pressed by the Commonwealth on appeal.

tenaciously waded through the sea of scattered, convoluted, and often irrelevant prose that comprised the parents' 44-page opening brief.  The puzzle persisted.

So, at oral argument we resolved to ask counsel (multiple times) to identify even the "flavor" of the parents' asserted theory of liability for the non-IDEA claims.  We specifically asked--"What did the <u>Commonwealth</u> do that's wrong?"

Counsel told us that the non-IDEA claims do not rest on the child's unmet educational needs.  Rather, counsel urged, they turn on the Commonwealth's refusal to allow the parents to file a complaint against Colegio after the parents reported Colegio's discriminatory "segregation" of the child and its failure to accommodate the child's special dietary needs.  The Commonwealth should have responded to these complaints, counsel argued, because the government is required to supervise organizations that receive public grant money.

Accepting the parents' interpretation of their pleading at face value, we explore whether these theories sufficiently state a claim for discrimination or retaliation.

First, we are not convinced by the parents' argument that the DOE should have "supervised" Colegio simply because Colegio received federal funds.  The parents provide us with no law or other reasoning to support the legal proposition that a private school acts as an agent of a state educational agency solely

because the school may generally receive public grant money. "It is not our job to put flesh on the bare bones of an underdeveloped argument." United States v. Mathur, 624 F.3d 498, 508 (1st Cir. 2010) (citation omitted). We consider this argument waived for our purposes.

More fatal to the parents' case, the pleaded allegations concerning the Commonwealth do not otherwise sufficiently state a claim for discrimination or retaliation under the ADA or the Rehabilitation Act. The parents alleged that the Commonwealth engaged in "intentional discrimination" against the child. To state a claim for intentional discrimination under either statute, the parents need have pleaded that the Commonwealth engaged in some wrongful action because of the child's disability. Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000); Lesley v. Hee Man Chie, 250 F.3d 47, 52-53 (1st Cir. 2001). The complaint misses the mark. The parents have provided no factual allegations that would support any inference, let alone a reasonable one, that the Commonwealth or any of its agents intentionally discriminated against the child because he was disabled. Simply alleging in a conclusory fashion that the defendants engaged in "intentional discrimination," as does the complaint here, is not enough to satisfy the pleading standard. Ocasio-Hernández, 640 F.3d at 13.

To establish a prima facie claim for retaliation under the ADA or the Rehabilitation Act, the parents would have to show

that they "engaged in protected conduct,"[9] were "subjected to an adverse action by the defendant," and "there was a causal connection between the protected conduct and the adverse action." Esposito, 675 F.3d at 41. The parents provide no facts that would allow us to plausibly infer that the DOE's refusal to file an administrative complaint against Colegio was causally related to the parents' decision to complain about Colegio's allegedly discriminatory behavior, as opposed to the DOE's belief that it could not take action against a private school. See M.M.R.-Z. ex rel. Ramírez-Senda, 528 F.3d at 15 (noting that ADA and Rehabilitation Act retaliation claims "rest on improper retaliatory intent"). The parents also made no effort in their briefing or at oral argument to illuminate the rationale they expect us to adopt.

For all of these reasons, we affirm the district court's dismissal of the parents' ADA and Rehabilitation Act claims. Given such holding, we further affirm dismissal of the § 1983 claim,[10] as the parents predicated it upon the failed discrimination claims.

## 2. The Reconsideration

In a last-ditch effort, the parents also argue that the district court abused its discretion by dismissing their non-IDEA

---

[9] Protected conduct includes advocating for a student's right to be free from disability-based discrimination. Esposito, 675 F.3d at 41.

[10] Section 1983 is the statutory vehicle by which plaintiffs may sue for violations of their constitutional rights.

-14-

claims with prejudice, failing to take into account the "material facts" they brought forth after voluntarily withdrawing their IDEA claim.  See Tell v. Trs. of Dartmouth Coll., 145 F.3d 417, 419-20 (1st Cir. 1998).  The parents, however, did not see fit to share with us what those material facts actually were.  A district court "exceeds its discretion when it fails to consider a significant factor in its decisional calculus, if it relies on an improper factor in computing that calculus, or if it considers all of the appropriate factors but makes a serious mistake in weighing such factors."  Colón Cabrera v. Esso Standard Oil Co. (Puerto Rico), Inc., 723 F.3d 82, 88 (1st Cir. 2013) (quotations omitted).  Given that the parents' brief directs us to nothing, be it fact or law, that they brought to the district court's attention, or would otherwise support a finding that the district court abused its discretion, we affirm the denial of the reconsideration.

## B. The State Law Claims

Finally, the district court also dismissed the Puerto Rico claims, on the ground that the parents were "barred under the Eleventh Amendment" from hauling the Commonwealth into federal court.  The parents argue, however, that the Commonwealth's sovereign immunity under the Eleventh Amendment is waived because Puerto Rico accepts federal funds for disabled students.

Unless a state consents, "a suit in which the State or one of its agencies or departments is named as the defendant is

proscribed by the Eleventh Amendment." Díaz-Fonseca, 451 F.3d at 33 (quotations omitted). "The Commonwealth of Puerto Rico is treated as a state for purposes of Eleventh Amendment immunity analysis." Id. "The Commonwealth can waive its immunity in three ways: (1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court . . . ; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) by affirmative conduct in litigation." Id. (quotations omitted).

As noted in the parents' brief, we previously held that Puerto Rico does not have Eleventh Amendment immunity against the federal IDEA and Rehabilitation Act claims because it accepts federal funds for those programs. Id. But that holding relied on particular statutory language. See id. (citing 20 U.S.C. § 1403(a), which conditions a state's receiving federal IDEA funds on consent to suit, and 42 U.S.C. § 2000d-7(a)(1), which provides for same under the Rehabilitation Act). This principle does not apply to Puerto Rico's general negligence statute, P.R. Laws Ann. tit. 31, § 5141. Díaz-Fonseca, 451 F.3d at 33 ("Although the Commonwealth has consented to be sued for damages in actions brought under the Commonwealth general negligence statute, such consent does not extend to actions filed in any courts but the Commonwealth's own."). Law 104 (P.R. Laws Ann. tit. 32, § 3077), which authorizes certain negligence suits against the Commonwealth

in state trial courts, "does not extend that waiver to suits filed in federal court."[11]  Díaz-Fonseca, 451 F.3d at 33.  And, as far as we can tell, Law 44 (Puerto Rico's version of the ADA) contains no statutory waiver of immunity from federal court lawsuits.  All in all, the parents offer no authority (or reasoning) why sovereign immunity would not extend to the Puerto Rico causes of action brought in this case under state law.[12]  Thus, any argument in this regard is waived for lack of development, and we affirm the dismissal of the Puerto Rico claims.

**IV. CONCLUSION**

For all of the reasons discussed above, we affirm the district court.

---

[11] As we mentioned above, it is not obvious from the complaint under which state statutory provisions the parents intended to plead claims for relief.  Regardless of what they had in mind, the parents have provided no basis for statutory (or other) waiver of the Commonwealth's sovereign immunity under any state cause of action.

[12] Given the parents' failure to assert otherwise, we assume, as we have in the past, that the "DOE's Eleventh Amendment immunity is coextensive with that of the Commonwealth's."  Díaz-Fonseca, 451 F.3d at 34.

-17-