Daniel **GRAJALES**, et al., Plaintiffs,

v.

**PUERTO RICO PORTS AUTHORITY,**
**et al., Defendants.**

**Civil No. 09–2075 PAD.**

United States District Court,
D. Puerto Rico.

Signed Jan. 12, 2015.

Eugenio W.A. Geigel–Simounet, Law Offices of Wilfredo A. Geigel, St. Croix, VI, Wilfredo A. Geigel, Law Offices of Wilfredo A. Geigel, Christiansted, St. Croix, VI, for Plaintiffs.

Guillermo San Antonio, GSA Law, LLC, Jorge Martinez–Luciano, M.L. & R.E. Law Firm, Marta D. Masferrer, Marta Masferrer Law Office, Yadhira Ramirez–Toro, Department of Justice, Miguel A. Maza–Perez, San Juan, PR, Yahil Quintero–Santos, Vega Baja, PR, for Defendants.

## OPINION AND ORDER

PEDRO A. DELGADO–HERNÁNDEZ, District Judge.

Daniel Grajales, his wife and their legal conjugal partnership initiated this action against the Puerto Rico Ports Authority and various individuals in their personal and official capacities, seeking payment of damages for alleged political discrimination under Federal and Puerto Rico law. Before the Court is the Ports Authority's "Motion to Dismiss on Eleventh Amendment Grounds" (Docket No. 346), which plaintiffs opposed (Docket No. 348). The Ports Authority replied (Docket No. 351), plaintiffs sur-replied (Docket No. 352), the Authority supplemented the dismissal motion (Docket No. 353), and plaintiffs requested that the motion be stricken (Docket No. 355). For the reasons explained below, the motion to dismiss is GRANTED and the case DISMISSED WITHOUT PREJUDICE.

## I. BACKGROUND

Plaintiffs filed the complaint claiming defendants had engaged in a campaign of harassment against Grajales because of his political affiliation in violation of 42 U.S.C. §§ 1983 and 1985, Puerto Rico Law No. 100 of June 30, 1959, and Articles 1802 and 1803 of the Puerto Rico Civil Code (Docket No. 1). They predicated jurisdiction over the federal claims on 28 U.S.C. §§ 1331, 1343, and over the state claims on 28 U.S.C. § 1367. In response to a motion to dismiss (Docket No. 14), they presented a First Amended Complaint adding claims under 20 U.S.C. § 1684 and 1701, 42 U.S.C. §§ 1981(c), 2000(c) and 12101, Sections 1, 4, 6, 8, 16 and 20 of the Puerto Rico Constitution, and Ports Authority internal policies and guidelines (Docket No. 31); and followed up with a Second Amended Complaint with no substantive modifications to the prior pleading (Docket No. 66). Defendants answered the complaint and amended complaints (Docket Nos. 13, 42, 43 and 67), and moved for judgment on the pleadings for failure to state a claim (Docket Nos. 82 and 88).

The Court granted defendants' request, dismissing the Federal claims with prejudice and the state claims without prejudice (Docket Nos. 110, 112). The First Circuit reversed, concluding that plaintiffs had put forth a plausible claim for relief, and re-

manded the case for further proceedings. *Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40 (1st Cir.2012).[1] On remand, plaintiffs filed a Third Amended Complaint incorporating the allegations of prior pleadings, adding that Grajales had been wrongfully terminated from his employment with the Ports Authority for discriminatory and retaliatory reasons (Docket No. 146). Defendants answered the new pleading (Docket No. 173) and entered into a stipulation of voluntary dismissal with prejudice as to the individually named defendants in their personal capacity (Docket No. 177), which the Court granted (Docket No. 178).

Out of the presence of the jury, during trial, the Court granted defendants' motion under Fed.R.Civ.P. 50 and dismissed the political discrimination claims (Docket No. 279). The Court instructed the jury to deliberate on the retaliation claim, but it was unable to reach a verdict (Docket No. 282).[2] Following several procedural incidents including entry of default against the Ports Authority for not complying with a court order (Docket No. 312), the Authority moved to dismiss on eleventh amendment grounds (Docket No. 346).

## II. *DISCUSSION*

### A. *Eleventh Amendment Immunity*

■ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." U.S. Const. Am. XI. Read literally, it applies only to suits against a State by citizens of another State. Nevertheless, its provisions have been extended to cover suits by citizens against their own State. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 362, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

■ On this construction, the Eleventh Amendment bars suits in federal court against unconsenting states and state officials in their official capacity, seeking to impose liability which must be paid from public funds in the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Davidson v. Howe*, 749 F.3d 21, 27 (1st Cir.2014).[3] It applies to the Commonwealth of Puerto Rico even though Puerto Rico is not a State. *Lebrón v. Commonwealth of Puerto Rico*, 770 F.3d 25, 32 (1st Cir.2014); *Consejo de Salud v. González-Feliciano*, 695 F.3d 83, 103 (1st Cir.2012), *cert. denied*, —— U.S. ——, 134 S.Ct. 54, 187 L.Ed.2d 24 (2013). The bar operates in cases where the State itself is not a named party, if any arm of the State is sued. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). Whether an entity is

---

1. In its decision, the First Circuit stated that even though the District Court had dismissed with prejudice all of plaintiffs' federal claims, plaintiffs had only sought review of dismissal under Section 1983. On this ground, the remaining federal claims were considered abandoned, "not [to] be resurrected on remand." *Grajales*, 682 F.3d at p. 45, n. 3. Therefore, the scope and effect of this Opinion and Order are limited to the Section 1983 and pendent state claims.

2. A second motion under Rule 50 addressing the retaliation claim was heard on the 6th day of trial and denied by the Court (Docket No. 281).

3. A suit against a state official in her official capacity is a suit against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Davidson*, 749 F.3d at 27.

an arm of the state within the meaning of the Eleventh Amendment is a question of federal law. *Regents of the Univ. of Cal.*, 519 U.S. at 429 n. 5, 117 S.Ct. 900 (1997); *Fresenius Md. Care Cardiovascular Res. Inc. v. Puerto Rico and the Caribbean Cardiovascular Center. Corp.*, 322 F.3d 56, 61 (1st Cir.2003).

### B. Ports Authority and the Eleventh Amendment

In *Royal Caribbean Corp. v. Puerto Rico Ports Authority*, 973 F.2d 8, 9 (1st Cir.1992), the First Circuit concluded that the Ports Authority was not an arm of the State entitled to Eleventh Amendment immunity. In reaching that conclusion, the court employed a multi-factor test that varied from case to case depending on the entity's function at issue in the case. *Id.* at 9. To that end, it considered several factors that in its view weighed "heavily against immunity," including the fact that Puerto Rico law (1) gave the Ports Authority the tasks of owning, operating and managing transportation facilities, including public property docks; (2) authorized the Authority to charge users of facilities fees sufficient, at least to cover the expenses incurred for the preservation, development, improvement, extension, repair, conservation, and operation of the facilities; (3) provided that the Authority was to acquire, produce, sell and otherwise dispose of services, goods, and property in connection with its activities, and to pay principal and interest on the Authority's bonds. For the court, these factors suggested proprietary rather than governmental activities like those of a private company that manages an office building and charges for its services. Together with the fact that the Ports Authority did not depend on Commonwealth financing for its income and had its own insurance; and that the Commonwealth did not consider the Authority's debts as its debts,

they led the First Circuit to deny immunity. *Id.* at 10–12.

### C. Updated Model

Since the ruling in *Royal Caribbean,* the First Circuit reshaped this test in *Fresenius,* 322 F.3d at 56, to account for intervening Supreme Court precedent recognizing that the Eleventh Amendment protects not only the State's interest in shielding its purse, but its dignitary interest in not being haled into federal court. *Id.* at 65. These twin interests in turn drive the analysis of whether an entity should be considered an arm of the state within the meaning of the Amendment. *Id.*

In light of this revised model, a federal court must first examine whether the state has clearly structured the entity to share its sovereignty. *Id.* Relevant factors in this inquiry include how the enabling and implementation statute characterizes the entity, the nature of the entity's functions, and the state's control over the entity's governance and operations. *Id.* If this initial inquiry does not conclusively demonstrate that the entity is an arm of the state, the court then inquires on whether the state treasury would pay for the entity's liabilities. *Id.* at 65 and 68. In that case, if it is clear that the state treasury is not at risk, the entity would not be entitled to Eleventh Amendment immunity. *Id.*

Under this test, an entity either is or is not an arm of the State: its status does not change from one case to the next based on the nature of litigation; the character of the activities giving rise to the case, whether proprietary or governmental; the State's financial responsibility in one case as compared to another; or other variable factors. Rather, once an entity is determined to be an arm of the State, that conclusion applies unless and until there

are relevant changes in the state law governing the entity. *See, P.R. Ports Authority v. Federal Maritime Com'n,* 531 F.3d 868, 873 (D.C.Cir.2008) (so noting).

 The First Circuit has yet to apply this test to the Ports Authority. However, the District of Columbia Circuit did so in *P.R. Ports Authority,* 531 F.3d at 868, concluding that the Ports Authority is an arm of Puerto Rico and thus, immune from monetary liability under the Eleventh Amendment. *Id.* at 881. Employing the factors identified in *Fresenius,* the court noted that the Ports Authority was created by Puerto Rico law as a government instrumentality rather than as a non-government entity. To that end, the enabling act describes the Authority both as a "government instrumentality of the Commonwealth of Puerto Rico," and as a "government controlled corporation," *Id.* at 875, citing P.R. Laws Ann. tit. 23 §§ 333(a), (b), and charges the Ports Authority with the responsibility to develop, improve, own, operate, and manage any and all types of air and marine transportation facilities and services, as well as with establishing and managing mass marine transportation systems in, to and from the Commonwealth of Puerto Rico, *Id.,* citing P.R. Laws Ann. tit. 23 § 336.

Along the same line, the Puerto Rico Dock and Harbor Act provides that with some exceptions, the Ports Authority controls the waters, ports, docks, and harbor zones, which are under the dominion of Puerto Rico, and vests the Authority with regulatory authority over pilot services in the harbors of Puerto Rico. *Id.,* citing P.R. Laws Ann. tit. 23 § 2202. Further, the Ports Authority regulates navigation and the marine trade in the navigable waters of Puerto Rico, including the inspection of ships to determine their condition of cleanliness and safety. *Id.* citing §§ 2201, 2301.

The Ports Authority's operational and regulatory functions must be performed not in the interest of private entities, but to promote the general welfare and to increase commerce and prosperity for the benefit of the people of Puerto Rico. *Id.,* citing § 348(a), §§ 2109 and 2202. Nor may they be separated from, but read together with Puerto Rico laws that apply to Commonwealth agencies generally, such as the Puerto Rico Administrative Procedures Act, *Id.* at 876, citing P.R. Laws Ann. tit. 23 §§ 336(*l*)(3) and 337(a). For the same reason, like other Commonwealth agencies, the Ports Authority does not have private owners or shareholders, does not pay taxes, must submit a yearly financial statement to the legislature and Governor, and must open its books to examination by the Controller of Puerto Rico. *Id.,* citing §§ 338, 348 and 345. In this framework, the interplay between the statutory characterization of the Ports Authority as a government instrumentality, the Authority's functions under Puerto Rico law, and the fact that the Authority is treated like other Commonwealth agencies for purposes of other Puerto Rico laws, led the court to identify strong support for the conclusion that the Authority is an arm of the Commonwealth entitled to sovereign immunity. *Id.* at 876–877.

A similar conclusion followed the court's evaluation of the degree of control that the Commonwealth exercises over this entity. *Id.* at 880. Four of the Authority's five directors are high-ranking Commonwealth officials who automatically serve on the Authority's Board by virtue of their government positions: the Secretary of Transportation and Public Works, the Economic Development Administrator, the Secretary of Commerce, and the Executive Director of the Tourism Company. *Id.* at 877, citing P.R. Laws Ann. tit. 23 § 334. Those four officials perform their services for the Ports Authority as part of their official

government duties, and receive no extra or separate compensation for their Board activities. *Id.* The fifth Board Member is a private citizen representing the public interest, who is appointed by the Governor with the consent of the Puerto Rico Senate. *Id.*, citing P.R. Laws Ann. tit. 23 § 334.

The Governor has the power to remove at will four of the five members of the Authority's Board of Directors for their government offices. Upon removal, they automatically lose their seats on the Authority's Board. The private citizen is removable by the Governor for cause. *Id.* The Ports Authority Board of Directors appoints and may remove at will the Authority's Executive Director, who is the Authority's chief executive officer. *Id.* at 878, citing P.R. Laws Ann. tit. 23 § 335. Relatedly, for the Puerto Rico Attorney General, the Governor of Puerto Rico retains control of Puerto Rico's public corporations (including the Ports Authority), *Id.* at 875, citing 1992 Op. Atty. Gen. P.R. 103 (Sept. 21, 1992), an opinion consistent with the degree of governmental control otherwise reflected in the legislation.

In conjunction with the entity's structural and operational configuration previously discussed, the elements of control reflected in the legislation were sufficient to satisfy the first prong of the *Fresenius* test, supporting the view that the Ports Authority is entitled to Eleventh Amendment immunity. That said, however, the District of Columbia Circuit went a step further, finding that the second prong also militates in favor of immunity. In that connection, the court noted that the Dock and Harbor Act

makes the Commonwealth directly liable for certain torts committed by the Ports Authority's officers, employees, or agents when they are acting in their official capacity and within the scope of their function, employment or agency relationship. *Id.* at 880, citing § 2303. Thus, some of the Authority's actions may give rise to legal liability for the Commonwealth, with payment for judgments coming out of the Commonwealth's coffers. *Id.* at 880. And in some instances, the Commonwealth may be substituted for the Ports Authority and be directly responsible for the Authority's actions. *Id.* From the overall effect on the treasury, then, the District of Columbia Circuit held that the Ports Authority is an arm of the state. *Id.*[4]

The Court finds this comprehensive analysis persuasive. In contrast to the Ports Authority, the entity under examination in *Fresenius* (the Caribbean Cardiovascular Center Corp. of Puerto Rico) was not created as an instrumentality of the State. *Id.* at 69–71. Yet Puerto Rico statutes use the term "instrumentality" when Puerto Rico intends to create an entity as an arm of the Commonwealth. *Id.* at 71 (so noting). A purpose underlying the Center's creation was to serve as justification to privatize Puerto Rico's health system. *Id.* at 70, n. 15. Since the Commonwealth carried out a major health care reform in 1993, the Center competed with private hospitals for legislative appropriations and other public funds allocated for cardiovascular surgery, with the reform presumably diminishing any policymaking function the entity may have had.

---

4. As the court observed, in analyzing this factor the relevant issue is a State's overall responsibility for funding the entity or paying the entity's debts or judgments, not whether the State would be responsible to pay a judgment in the particular case at issue. *Id.* at 878 (citing *Hess v. Port Authority Trans-Hud-*

*son Corp.*, 513 U.S. 30, 45–46, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994); *Lake Country Estates v. Tahoe*, 440 U.S. 391, 401–402, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Mt. Healthy v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

*Id.* at 71. While the Center was exempt from all taxes and fees collected by the government of Puerto Rico and its political subdivisions, based on the record the court observed that private hospitals were also exempt from local taxes and duties. *Id.* at 69, n. 14. Moreover, the enabling statute did not give the Governor the power to remove the Center's Board members. *Id.* Since these indicia did not point in the direction of the entity's being an arm of the state, the First Circuit reached the second stage of the analysis, - finding among other things, that legislation did not make the Commonwealth liable for the entity's debts. *Id.* at 72. In these circumstances, the overall effect of the entity's finances on the Commonwealth's treasury did not support the entity's claim to immunity under the Eleventh Amendment either. *Id.*

Read in light of the refined test laid out in *Fresenius* as was applied in *P.R. Ports Authority,* 531 F.3d at 868, the contrast between the Cardiovascular Center's characteristics and those of the Ports Authority cannot be bypassed. *Id.* at 881, n. 10 (noting relevant differences between the Ports Authority and the Cardiovascular Center considered in *Fresenius* ). Similarly, it leads to divergent pathways under the Eleventh Amendment, and for the Ports Authority, to recognition as an arm of the State. State intent, state control (and even overall effect on the State treasury), so dictate. For the same reason, the Ports Authority is entitled to Eleventh Amendment immunity.[5]

### D. *Waiver of Immunity*

█ Plaintiffs claim the Ports Authority waived the immunity (Docket No. 355,

Att. 1 at p. 2). Waiver may be found by the State's (1) clear declaration that it intends to submit itself to the jurisdiction of a federal court; (2) participation in a federal program for which waiver of immunity is an express condition; and (3) affirmative conduct in litigation. *Vaquería Tres Monjitas, Inc. v. Pagán,* 748 F.3d 21, 26 (1st Cir.2014); *González–Feliciano,* 695 F.3d at 103. The standard for a finding waiver is a stringent one. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *Vaquería Tres Monjitas, Inc.,* 748 F.3d at 26. By these measures, there is no occasion to find waiver.

█ The case does not involve the Commonwealth's participation in any federal program for which such waiver is a condition. Even though Puerto Rico has waived sovereign immunity to be sued in its own courts, such a consent does not amount to a waiver of Eleventh Amendment immunity in federal courts. *Díaz–Fonseca v. Puerto Rico,* 451 F.3d 13, 33 (1st Cir.2006). Nor is litigation behavior sufficient to infer waiver. To support that inference, the State must have voluntarily entreated a federal court to adjudicate its rights. *See, Lapides v. Board of Regents of University System of Georgia,* 535 U.S. 613, 620, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) (State waived immunity where it voluntarily agreed to remove the case to federal court); *Gardner v. State of New Jersey,* 329 U.S. 565, 573–574, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (State waived immunity where it invoked the aid of bankruptcy court by filing a proof of claim); and *New*

---

**5.** This conclusion is similar to that subscribed by other courts in this District. *See, Del Valle Group v. Puerto Rico Ports Authority,* 756 F.Supp.2d 169 (D.P.R.2010); *Falcón–Cuevas v. Puerto Rico Ports Authority,* 2014 WL 4260678 (D.P.R. August 29, 2014); and *Orocovis Petroleum Corp. v. Puerto Rico Ports Authority,* 2010 WL 3981665 (D.P.R. October 5, 2010).

*Hampshire v. Ramsey,* 366 F.3d 1, 15 (1st Cir.2004) (State waived immunity where it invoked jurisdiction of federal agency whose decisions were subject to review in federal court). That the State is haled into federal court as a defendant against its will and defends itself will not do. *See, Florida Dept. of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 683 n. 18, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) ("The fact that the State appeared and offered defenses on the merits does not foreclose consideration of the Eleventh Amendment issue. . .").

The Ports Authority did not initiate this litigation. It was brought into court, where it chose to defend. And in defending, it raised the defense of immunity in its answers to the Complaint (Docket No. 13 at p. 3), the First Amended Complaint (Docket No. 43 at p. 4), the Second Amended Compliant (Docket No. 67 at p. 12), and the Third Amended Complaint (Docket No. 173 at p. 11). It is apparent it did not unquestionably waived its immunity to suit in this forum. *See, González–Feliciano,* 695 F.3d at 103 (State did not waive Eleventh Amendment immunity where, among other things, it raised the immunity defense).

■ Plaintiffs posit the Ports Authority was stripped of immunity after being found in default (Docket No. 355, Att. 1 at p. 2). The Eleventh Amendment's withdrawal of jurisdiction confers immunity from suit instead of merely a defense to liability. *Metcalf & Eddy,* 506 U.S. at 144, 146, 113 S.Ct. 684. Hence, the salience of the provision overrides ordinary notions of default. *De León López v. Corporación Insular de Seguros,* 931 F.2d 116, 121 (1st Cir.1991). As a result, in *Echevarria–Gonzalez v. Gonzalez–Chapel,* 849 F.2d 24, 32 (1st Cir.1988), the First Circuit vacated a default judgment entered against the Secretary of Agriculture of Puerto Rico in his official capacity, even though the immunity issue was raised for the first time at oral argument, on appeal. *Id.* In these conditions, that entry of default was entered against the Ports Authority as a sanction in this proceeding does not serve to deprive the Authority of Eleventh Amendment immunity.[6]

### III. *CONCLUSION*

In view of the foregoing, the Ports Authority's "Motion to Dismiss on Eleventh Amendment Grounds" (Docket No. 346) is GRANTED. Plaintiffs' federal and pendent state claims are DISMISSED WITHOUT PREJUDICE.[7] Judgment will be entered accordingly.

**SO ORDERED.**

---

6. Default was entered against the Ports Authority when it failed to abide by a court order requiring the Authority to announce new legal representation within 30 days (Docket No. 312).

7. During trial, the Court assertedly dismissed plaintiffs' discrimination (*i.e.* Section 1983) action (Docket No. 279). Correspondingly, the retaliation action (under state law) was submitted to the jury as the only claim awaiting disposition (Docket Nos. 279, 282 and 284). The jury, however, deadlocked and did not reach a verdict (Docket No. 282). In the meantime, no judgment was entered with respect to the Section 1983 claim, the parties were referred to a U.S. Magistrate Judge for settlement negotiations (Docket No. 284), and default was entered against the Ports Authority (Docket No. 312). Given this procedural posture; that the Eleventh Amendment presents a jurisdictional bar precluding evaluation on the merits of monetary claims against an arm of the state; and that state courts have

concurrent jurisdiction over 42 U.S.C. § 1983—*Howlett v. Rose*, 496 U.S. 356, 358, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990)—the Court will dismiss without prejudice both the state retaliation action and the § 1983 claim.

Should plaintiffs decide to pursue the § 1983 claim in local court, that court would naturally evaluate the merits of the claim applying federal law. *Felder v. Casey*, 487 U.S. 131, 151, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988).