# United States Court of Appeals
## For the First Circuit

No. 20-1797

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors.

---

JOSE RAMON RIVERA-RIVERA, President, Fiduciary, and Trustee of the Board of Trustees of the Electric Power Authority's Employees' Retirement System; SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGIA ELECTRICA, (SREAEE); BOARD OF TRUSTEES OF THE PUERTO RICO ELECTRIC POWER AUTHORITY EMPLOYEES' RETIREMENT SYSTEM; RALPHIE E. DOMINICCI RIVERA; ANGEL R. FIGUEROA-JARAMILLO; JUAN CARLOS ADROVER; SAMMY RODRIGUEZ; ALVIN ROMAN; ERNESTO ZAYAS LOPEZ, a/k/a Erasto Zayas Lopez,

Plaintiffs, Appellants,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); FERNANDO GIL ENSEAT; CARLOS M. YAMIN-RIVERA; ROBERT POE; CHARLES BAYLESS; DAVID K. OWENS; RALPH A. KREIL; GERARDO LORAN-BUTRON; TOMAS TORRES-PLACA; PEDRO R. PIERLUISI,

Defendants, Appellees,

PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY

Interested Party, Appellee,

ERNESTO SGROI HERNANDEZ; RICARDO ROSSELLO NEVARES; CHRISTIAN
SOBRINO-VEGA,

Defendants.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain, U.S. District Judge*]

———————————

Before

Kayatta and Barron, Circuit Judges,
and O'Toole, Jr., District Judge.**

———————————

Guillermo J. Ramos-Luiña, with whom Rafael A. Ortiz-Mendoza,
Rolando Emmanuelli-Jiménez, Jessica E. Méndez-Colberg, Wendloyn
Torres-Rivera, and Bufete Emmanuelli, C.S.P. were on brief, for
appellants.
Lary Alan Rappaport, William J. Shushon, with whom Peter M. Friedman, John J.
Rapisardi, and O'Melveny & Myers LLP were on brief, for interested
party-appellee the Puerto Rico Fiscal Agency and Advisory
Authority.
Lary Alan Rappaport, with whom Martin J. Bienenstock, Ehud
Barak, Mark D. Harris, Paul V. Possinger, Timothy W. Mungovan,
John E. Roberts, and Proskauer Rose LLP were on brief, for appellee
Fiscal Oversight and Management Board for Puerto Rico as
representative of the Commonwealth of Puerto Rico and the Puerto
Rico Electric Power Authority.
Carlos Lugo-Fiol was on brief for appellee Governor of Puerto
Rico Pedro Pierluisi.
Katiuska Bolaños Lugo, with whom Díaz & Vázquez Law Firm,

———————————

* Of the Southern District of New York, sitting by
designation.

** Of the District of Massachusetts, sitting by designation.

P.S.C. was on brief, for appellees Robert Poe, Charles Bayless, David K. Owens, Ralph A. Kreil, Gerardo Lorán-Butrón, and Tomás Torres-Placa.

October 27, 2021

BARRON, Circuit Judge. This case concerns a request for declaratory relief in relation to a now-expired and formally rescinded executive order that the Governor of Puerto Rico issued in connection with the effort to address the Commonwealth's ongoing fiscal crisis. The order, among other things, temporarily appointed members to the Board of Trustees of the Retirement System of the Puerto Rican Electric Power Authority ("PREPA"), effectively displacing the sitting trustees for a limited purpose. The case was heard by the federal court established in June 2016 by Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), see 48 U.S.C. §§ 2161-2177, to handle matters relating to the debt crisis in Puerto Rico ("the Title III Court"). The Title III Court dismissed the complaint on the ground that it is moot. We now affirm.

## I.

The Puerto Rico Electric Power Authority Employees' Retirement System ("Retirement System") was created in 1945 pursuant to a collective bargaining agreement between PREPA and the Puerto Rico Electric Industry and Irrigation Workers Union. The Retirement System is responsible for administering a pension plan for more than 12,000 retired employees of PREPA, a public corporation responsible for the generation and transmission of electricity in Puerto Rico.

A resolution issued alongside the 1945 collective

- 4 -

bargaining agreement entrusts administration of the Retirement System's pension plan to a Board of Trustees. Pursuant to the Retirement System's Bylaws, three trustees are selected by PREPA employees, three trustees are selected by PREPA's Board of Directors, one trustee is elected by retired PREPA employees, and one serves dually as a trustee and as the Executive Director of PREPA.

The Fiscal Oversight and Management Board ("FOMB") was created by PROMESA. It is authorized, among other things, to "require . . . the Governor to submit to the Oversight Board . . . budgets . . . regarding a covered territorial instrumentality." 48 U.S.C. § 2121(d)(1)(B). The FOMB designated PREPA as a covered entity on September 30, 2016.

On March 22, 2018, Governor Ricardo Rosselló Nevares issued Executive Order No. 2018-012 ("Order"). Citing the Commonwealth's ongoing economic crisis and PROMESA's acknowledgment of the "Government's failure to issue audited financial statements since the year 2014," the Order asserted that "it is necessary to have the most recent, precise, updated, and audited financial information from PREPA, including all of the units that comprise it." P.R. Exec. Order No. 2018-012, at 1 (Mar. 22, 2018); see 48 U.S.C. § 2146(a) (setting out requirements regarding the FOMB's issuance of a restructuring certification for a covered entity); H.R. Rep. No. 114-602, pt. 1, at 47 (2016)

- 5 -

(providing that the FOMB "must certify by an affirmative vote . . . that the [covered] entity has . . . adopted procedures necessary to deliver timely audited financial statements"). The Order's preambulatory clauses treated the Retirement System as a component of PREPA and thus as a covered entity subject to the FOMB's oversight. P.R. Exec. Order No. 2018-012, at 1. The Order then asserted that the Retirement System's Board of Trustees had "not complied with the annual obligation imposed by [PREPA's] Bylaws," which the Order read as imposing on the Board of Trustees an "obligation to approve annually the actuarial reports and financial statements of the Retirement System." Id. at 2. The Order further asserted that "certain members of said Board [of Trustees] have opted to not act" in compliance with their obligation under PREPA's Bylaws, which in turn "impacts directly PREPA's ability to complete its financial statements" because "the Retirement System's actuarial reports, financial statements, . . . and other pertinent information . . . is part of PREPA's financial statements." Id.

Section 1 of the Order appointed PREPA's Board of Directors as trustee for the Retirement System for two purposes: finalizing and issuing actuarial reports and financial statements of the Retirement System for Fiscal Year 2017, and delivering information to the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") related to the preparation of PREPA's budget

- 6 -

for Fiscal Year 2019.[1]  Id. at 4.  Section 2 granted PREPA's Board of Directors, in its capacity as trustee for the Retirement System, "any power or function of the Board of Trustees that may be necessary or convenient to carry out the urgent purposes mentioned above."  Id. at 4-5.  Section 2 also acknowledged that the Retirement System's sitting Board of Trustees reserved authority to "exercis[e] the other functions corresponding to it in the daily administration of the Retirement System, provided that it may not impede . . . the approval and/or publication by the Board of Directors of the Retirement System's actuarial reports or financial statements."  Id. at 5.

The Order also described when it would terminate: by its own terms, the Order would no longer be effective upon the Retirement System's issuance of their actuarial reports and financial statements "for the corresponding fiscal years, up to and including fiscal year 2017," the FOMB's certification of a revised fiscal plan for PREPA, and the FOMB's certification of a budget for PREPA for fiscal year 2019.  Id. at 5.

On March 27, 2018, José Ramón Rivera-Rivera, President of the Retirement System's Board of Trustees prior to the Order's issuance, filed a complaint in the Puerto Rico Court of First Instance.  The complaint sought a permanent injunction rendering

---

[1] The AAFAF is a defendant in this suit in its capacity as a representative for the Commonwealth of Puerto Rico and PREPA.

- 7 -

the Order and actions taken under it void. The other plaintiffs were the Retirement System, the Retirement System's Board of Trustees (in its organizational capacity), and members of the Retirement System's Board of Trustees.[2] We refer to the plaintiffs, collectively, as the "Retirement System." The complaint also sought a declaration that the Retirement System is a trust "separate and independent of" PREPA and that the Order is an undue "interference with the independence and powers of the Retirement System." The suit named as the defendants the Commonwealth of Puerto Rico, Governor Rosselló Nevares, PREPA, and President of PREPA's Board of Directors, Ernesto Sgroi Hernández. We refer to the defendants, collectively, as "the defendants."

The FOMB, acting pursuant to 48 U.S.C. § 2166(a), removed this action to the Title III Court. It did so on the ground that the injunctive and declaratory relief requested by the Retirement System would "interfere with the [FOMB's] ability,

_____

[2] The members of the Retirement System's Board of Trustees who initially filed suit were Ralphie E. Dominicci Rivera, Ángel R. Figueroa-Jaramillo, and Ernesto Zayas López. These members were elected to their positions by PREPA employees. The Second Amended Complaint names as plaintiffs Juan Carlos Adrover, Sammy Rodríguez, and Alvin Román, members of the Board who were designated as such by PREPA management.

One peculiarity in this case is that José Ortiz, Executive Director of PREPA's Governing Body, also served as a member of the Retirement System's Board of Trustees. He did not consent to join the action as a plaintiff but was named as a defendant in the Second Amended Complaint because plaintiffs viewed him as an indispensable party to the action.

- 8 -

among other things, to restructure PREPA by placing the Retirement System and its assets . . . outside of the [FOMB's] purview."[3] The Retirement System filed in response a motion to remand the case to the Court of First Instance. The motion was denied. In re Fin. Oversight & Mgmt. Bd. for P.R., Title III Case No. 17-BK-3283, Adv. No. 18-AP-0047, 2018 WL 8130850, at *5 (D.P.R. Oct. 12, 2018).

In November 2019, Governor Wanda Vázquez Garced issued Executive Order No. 2019-060, which operated to formally withdraw the executive order that is our focus here. The Retirement System then filed a Second Amended Complaint in January 2020, which sought relief in the form of "a Declaratory Judgment decreeing that [the Order] was null and void and therefore the actions that were taken based on [it] are equally null and void."[4]

The FOMB moved to dismiss the Retirement System's Second Amended Complaint for lack of subject matter jurisdiction on mootness grounds, due to the expiration and formal rescission of the Order. See Fed. R. Civ. P. 12(h)(3). The Title III Court

---

[3] The FOMB is a defendant in this suit in its capacity as representative for the Commonwealth of Puerto Rico and in its capacity as a representative for PREPA. See 48 U.S.C. § 2175(b) ("The [FOMB] in a case under [Title III] is the representative of the debtor.").

[4] The FOMB alleges, and the Retirement System does not dispute, that Exec. Order No. 2018-012, by its own terms, was no longer in effect as of June 2019.

determined that the Retirement System had demonstrated the existence of a substantial controversy, premised on the "disputed validity of acts taken pursuant to" the Order. See Rivera-Rivera, Adv. Proc. No. 18-AP-0047-LTS (slip op. at 9) (D.P.R. July 30, 2020). However, the Title III Court held that the Retirement System failed to show that its requested declaratory relief presented a controversy of sufficient reality or immediacy. Id. at 11.

Noting that the reality or immediacy of a plaintiff's requested relief is shown where "it takes on a conclusive character and 'settle[s] some dispute which affects the behavior of the defendant[s] towards the plaintiff[s],'" id. at 10 (citing In re Fin. Oversight & Mgmt. Bd. for P.R. ("Aurelius Capital Master II"), 919 F.3d 638, 646 (1st Cir. 2019)), the Title III Court explained that the dispute lacked "sufficient immediacy and reality" to give the relief sought by the Retirement System -- the "right to evaluate, intervene, modify, amend or ratify" the financial statements issued by the PREPA Board of Directors while the Order was in effect -- and that it failed to show what past "specific actions in mind that [the Retirement System] hope[d] to eschew, or that they intend[ed] to modify," id. at 11-12. The Title III Court held accordingly that the case was moot and that it lacked subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Id. at 12.

Appellants filed a timely notice of appeal. We have jurisdiction to hear this appeal under 28 U.S.C. § 1291 and 48 U.S.C. § 2166(e)(2).

**II.**

The threshold question on appeal is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." See Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); see also Town of Portsmouth v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016).[5] Our review is de novo, see Aurelius Cap. Master II, 919 F.3d at 644, and because the case before us arises under the Declaratory Judgment Act, the burden is on the Retirement System to make the required showing, see Town of Portsmouth, 813 F.3d at 59.

We may assume that the Retirement System could have met its burden to make that showing while the Order was still operative, based on the fact that the Order displaced the Board of Trustees with respect to some of its functions and limited the

[5] The parties do not dispute the existence of a substantial controversy. We thus affirm the Title III court's determination that "[t]he disputed validity of acts taken pursuant to the Executive Order is a substantial controversy." Rivera-Rivera, No. 18-AP-0047-LTS (slip op. at 9) (D.P.R. July 30, 2020).

trustees' ability to fulfill their fiduciary duties to the Retirement System.  But, the Order expired by its own terms in June 2019, upon the certification of PREPA's Fiscal Plan by the FOMB.  It was then later rescinded formally by an executive order issued by Governor Wanda Vázquez Garced on November 24, 2019.  See P.R. Exec. Order 2019-060 (Nov. 24, 2019).  Thus, there is no longer any basis for concluding that there is the requisite type of controversy, insofar as the basis for showing as much is premised on an ongoing displacement brought about by the Order. See Town of Portsmouth, 813 F.3d at 58-60 (finding the case moot because the state legislature prohibited the tolls in dispute).

The Retirement System nevertheless contends that it has suffered continued harm from the Order -- even after it ceased to be operative -- and that, as a result, this Court should find the existence of a controversy of sufficient immediacy and reality despite the Order's expiration and rescission.  The Retirement System nowhere explains, however, what harm is ongoing -- and fairly traceable to the now-expired Order -- that is presently causing them injuries that could give them standing to seek declaratory relief.

The Retirement System does allege ongoing harm resulting from the Order's grant of authority to PREPA's Board of Directors based on its understanding that the financial statements issued by the Board, now binding on the Retirement System, "do not reflect

- 12 -

the decisional power that [the Retirement System's trustees have] over the Retirement System." But, as the defendants note and the Title III Court concluded, the Retirement System fails to "explain what being 'bound' practically means or how it is causing them concrete injury."

For example, the Retirement System does not allege that the information disclosed in the financial statements issued under the Board of Directors' authority in any way misrepresents the Retirement System's financial position. Nor does it allege that the financial statements have resulted in harm to PREPA retirees or other beneficiaries of the pension plan. Indeed, in its Second Amended Complaint, the Retirement System alleges that the harm resulting from the Order and actions taken under it "cannot be effectively quantified" and suggests that its filing of the action before us was spurred by a "generalized state of uneasiness" experienced by the "approximately 12,268 retirees and approximately 6,227 active employees in the [Retirement System]."

Accordingly, even if the Order has some ongoing effect on the Retirement System's expectations as to its relationship with the Commonwealth, FOMB, and PREPA, the Retirement System has failed to show that any effect constitutes a concrete injury for purposes of the "case or controversy" requirement of Article III of the U.S. Constitution. See Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1550, 194 L.Ed.2d 635 (2016) ("Robins cannot satisfy the

- 13 -

demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm."); Gov. Wentworth Reg'l Sch. Dist. v. Hendrickson, 201 F. App'x 7, 9 (1st Cir. 2006). Thus, the Retirement System fails to show that the Title III Court erred in dismissing the action on mootness grounds.

## III.

The Retirement System does separately contend that, even though the Order is no longer in place -- and even if there is no live, immediate controversy as a result -- the Second Amended Complaint still is not moot under certain well-known exceptions to the mootness doctrine. It thus contends that, insofar as an exception applies, there is an "immediate and real" controversy that would satisfy the Declaratory Judgment Act's requirements. We may assume that a showing that one of these exceptions applies would have the consequence that the Retirement System posits. But, as we will explain, none of the exceptions to which the Retirement System directs our attention is applicable here.

The Retirement System first invokes the "voluntary cessation" exception to mootness, which provides that a defendant's voluntary cessation of putatively illegal or unconstitutional conduct will not moot a case, unless the defendant "meets 'the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be

- 14 -

expected to recur.'" American Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 55 (1st Cir. 2013) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).  The Retirement System contends that the defendants have failed to show that unlawful interference with its independence will not occur the "next time the [Fiscal Oversight and Management Board] or the Commonwealth deems it necessary for PREPA to comply with the Oversight Board's requirements regarding the certification of PREPA's Fiscal Plan and Budget."

The Retirement System did not make this argument to the Title III Court, however, and "[i]t is a well-settled principle in this circuit that 'a party . . . may not raise on appeal issues that were not seasonably advanced (and, hence, preserved) below.'" Toren v. Toren, 191 F.3d 23, 29 (1st Cir. 1999)(second alteration in original)(quoting Daigle v. Me. Med. Ctr. Inc., 14 F.3d 684, 687 (1st Cir. 1994)).  But, even if we were to overlook the problem with the Retirement System raising this argument as late as it has, we do not find it to be persuasive, given that the Order "expired by its own terms, according to criteria adopted before [the Retirement System] ever filed this litigation."  There is thus no basis on this record for finding that the concerns about manipulation to evade review that underlie this exception to mootness are implicated. ACLU of Mass., 705 F.3d at 55.

The Retirement System next argues that the "capable of repetition yet evading review" exception to mootness applies here. We may apply this exception where a plaintiff shows "(1) the challenged action was in its duration too short to be fully litigated prior to cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subject to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975); see also Davidson v. Howe, 749 F.3d 21, 26 (1st Cir. 2014). The Retirement System has failed to satisfy the first requirement, as it offers no explanation for why the Order did not remain operative long enough for a challenge to its legal validity to be fully litigated, given that the Order was in effect for fifteen months until its expiration. See Gulf of Me. Fisherman's All. v. Daley, 292 F.3d 84, 89 (1st Cir. 2002) (considering "the actual, as opposed to theoretical" life of a regulation "and the historical fact that review is indeed possible" as part of its analysis of whether the challenged regulation "was too short in duration to be fully litigated before its expiration") (internal quotation marks omitted).

The Retirement System does point us to delays beyond its control that it contends prevented this case from being fully litigated before the Order expired. But, the record does not provide support for rejecting the Title III Court's contrary reading of the record. See Fisherman's All., 292 F.3d at 89

- 16 -

("[A]ppellant never requested expedited review during this litigation. On the contrary, both parties sought numerous extensions of time for filing the administrative record, motions, and briefs. As a result of these delays, we cannot know whether [appellant] might have obtained a judgment on its challenges . . . .").

Finally, the Retirement System argues that the "collateral consequences" exception to mootness applies here. This exception has been applied traditionally in criminal cases because a federal court can, as a general matter, "presume that [collateral consequences] exist" stemming from an unconstitutional conviction. See Sibron v. New York, 392 U.S. 40, 55-56, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Even if we assume that the exception may apply outside of the criminal conviction context, see United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Government of the Virgin Islands, 842 F.3d 201, 209 (3d Cir. 2016), the problem here is that the Retirement System points to the same inchoate and barely articulated consequences that we found too diffuse and unformed to supply a basis for finding a substantial controversy of sufficient immediacy now that the Order is no more. Thus, this ground for overcoming mootness fails as well.

**IV.**

The Title III Court correctly held that the plaintiffs failed to show the existence of a justiciable case and controversy. We thus **affirm** the Title III Court's dismissal of the case for lack of subject matter jurisdiction.